123 So.2d 458 (1960)
William B. GILLESPIE, Petitioner,
v.
John L. ANDERSON, dba Anderson Bottled Gas Company, and The Fidelity and Casualty Company of New York, and The Florida Industrial Commission, Respondents.
Supreme Court of Florida.
September 30, 1960.
Rehearing Denied October 26, 1960.
Richard A. Bianco, Tampa, for petitioner.
Rodney Durrance and Calvin A. Pope of Shackleford, Farrior, Stallings, Glos & Evans, Tampa, Burnis T. Coleman and Paul E. Speh, Tallahassee, for respondents.
WIGGINTON, District Court Judge.
Petitioner, hereinafter referred to as claimant, seeks review by certiorari of an order entered by the Industrial Commission affirming the compensation order entered by its deputy. It is contended that there is no competent substantial evidence to support the deputy's findings, and that *459 his conclusions based thereon do not accord with logic and reason.
This case is remarkable in that with but a single exception, none of the facts in issue are controverted. The single exception relates to the date on which claimant reached maximum medical recovery.
Claimant suffered a compensable injury arising out of and in the course of his employment with respondent Anderson, doing business as Anderson Bottled Gas Company. Claimant's duties consisted in part of lifting and moving large cylinders of bottled gas weighing approximately 175 pounds each. He had been engaged in this employment for a period of some fourteen months prior to the accident. During his lifetime claimant had performed heavy work in various jobs and enjoyed excellent health. While in the process of lifting one of the cylinders of gas claimant experienced a sharp and sudden pain in his lower back which completely disabled him from further work with his employer. He consulted a physician who administered heat treatments to his back over a period of about one week. An x-ray taken during this time failed to show any fracture of the spine.
Claimant continued to suffer pain in his lower back and legs, and also experienced severe bitemporal headaches. Commencing about three months after the accident claimant was referred by the compensation carrier to a qualified orthopedic surgeon who proceeded to diagnose and treat him for his several ailments. Treatments by this doctor consisted mainly of consultations with and examinations of claimant. As a result a back brace, postural exercises and built-up right shoe were prescribed. Further x-rays failed to reveal any organic cause for the pain which claimant continued to suffer, although the medical conclusion was reached that the injury resulted in a herniated intervertebral disc in the lumbar region of his spine. About one year after the injury claimant was discharged by the orthopedist upon the latter's belief that claimant could then return to light work at an employment level of which he might be capable. It was the doctor's opinion, as expressed in his final report of January 15, 1957, that claimant should be assigned a permanent partial disability rating of twenty per cent. We pause to note that in every report filed by this doctor he recounts that in spite of negative objective findings claimant complained of pain in his back and lower extremities on his every visit to the doctor's office during the entire period of observation and treatment. We further note that in his final report the doctor expressed no opinion as to whether claimant had then reached maximum medical recovery. By his compensation order the deputy commissioner found that it was on January 10, 1957, that claimant's temporary total disability ceased, and that all future benefits payable to claimant should be on the basis of a twenty per cent permanent partial disability rating. It is this finding which forms the crux of this review.
Following his discharge by the orthopedist claimant continued to suffer the same pains which he had experienced since the date of his injury. He was thereupon referred by the compensation carrier to a neurologist for further examination and treatment. The neurologist's examination revealed objective findings conformable to those reached by the orthopedist. This doctor concurred in the prior diagnosis that claimant was probably suffering from a herniated intervertebral disc, and recommended a myelogram be taken of his spine. This was done but the results proved negative, thereby ruling out the existence of such a condition.
The neurologist continued to see claimant over a period of more than a year during which consultations he observed claimant and reached the conclusion that his condition was gradually improving. No operation to discover the cause of claimant's continued pain and suffering was recommended *460 or performed. Despite the consultations with the neurologist, claimant continued to complain of severe and disabling pain in his lower back and extremities. After having observed and tested claimant on five separate occasions over a period of some sixteen months, the neurologist filed his final report on May 21, 1958, in which he opined that claimant had then reached maximum medical recovery and should be assigned a twenty per cent permanent partial disability. Claimant returned to the neurologist some four months later still complaining of pain in his back and legs, but the neurologist reported that he had no further suggestions for therapy to relieve claimant's condition.
In summary it clearly appears from the foregoing evidence offered by the two specialists employed by the compensation carrier that since the x-rays, myelogram and objective tests failed to reveal to them the source of the pain from which claimant was suffering, they were forced to the conclusion that he had reached maximum medical recovery and that no further medical treatments were necessary.
Following his discharge by the neurologist claimant continued to remain disabled from performing anything but light work at odd jobs which he was able to procure from time to time. The pain in his lower back and legs persisted, and because of this condition claimant requested permission of the compensation carrier to consult a second neurologist. This permission was refused and claimant was advised that the carrier would not pay any further medical bills incurred by him. He was further advised that future medical treatment would be at his own expense. Regardless of this refusal claimant employed the services of a concededly qualified neurosurgeon who proceeded to make a thorough examination of claimant's condition. A study of the myelogram report and x-rays previously taken, as well as other x-rays then procured, convinced this doctor that an organic cause for claimant's persistent pain existed. He found that claimant's complaints were corroborated by his neurological examination and findings. Although he was unable to diagnose with certainty the exact cause of claimant's troubles, he was convinced that an operation would be necessary to finally determine the cause of claimant's disabling condition. This neurologist thereupon performed a lumbo-sacral laminectomy.
Without burdening this opinion with a technical explanation of the operation, it is sufficient to state that the operation revealed to the surgeon what he testified to be the cause of claimant's continued disability, which cause was directly connected with the occupational accident which claimant had initially suffered some three years previously. The doctor testified that he corrected the damaged condition which he found to exist in claimant's spine. After claimant's convalescence from this operation the evidence reveals that he gained fourteen pounds; the pain and numbness of his right upper extremities that was present following the injury had disappeared, and normal control of his extremities had been restored. He was able to straighten his leg and walk without any unusual disturbance of his gait. Motor control of his lower extremities was uninvolved. Although claimant had worn a back brace prior to surgery, he was thereafter able to discard the brace and suffered no further pain in his back. The doctor expressed the opinion that from the date of the injury to the date of the operation claimant was totally disabled from performing the work he was doing at the time of the injury. He stated that claimant's disability was improved to the extent of 80% by the operation, and that as a result of the surgery claimant reached maximum medical improvement on August 7, 1959, but would continue to remain partially disabled to the extent of 20% of the body as a whole.
Based upon the foregoing evidence the deputy filed his report setting forth his findings and conclusions.
*461 The deputy found that claimant worked as a used car salesman in Valdosta, Georgia, during a period of three weeks during which he earned compensation at the rate of $50 a week. There is no evidence in the record to support this finding. The evidence reveals that while working for a used car company in Tampa, claimant made one trip to Valdosta where he picked up a used car purchased by his employer and immediately returned to Tampa.
The deputy found that subsequent to January 10, 1957 (the date on which he found that claimant had reached maximum medical recovery) claimant was able to work more or less regularly at wages ranging from $50 to $65 a week. There is no evidence in the record to support this finding. The evidence does reveal that subsequent to claimant's injury on January 26, 1956, and prior to January 10, 1957, claimant was almost totally disabled from performing any type of work. During this period of almost one year claimant applied for work through the employment office of the Industrial Commission, but was told that he was unemployable because of his disability. He did, however, secure sporadic employment as a salesman of used cars in Tampa, working a total of nine weeks for three different employers at salaries averaging about $50 a week. He was unable to hold any of these jobs because of his inability to walk any great distance, stand on his feet for any appreciable length of time or lift any heavy objects. After January 10, 1957, the record reveals that claimant secured either full or part-time employment with two different used car dealers in Tampa for whom he worked a total of 16 weeks out of the 104 weeks which ensued between the date fixed by the deputy as the time claimant reached maximum medical recovery, and the date on which testimony was taken in the case on January 1, 1959. In addition to his work as a used car salesman plaintiff traveled to Michigan, where he attempted to work as a fruit harvester, but found that he was unable to engage in this employment due to his physical disability. The evidence falls far short from establishing in the slightest degree that claimant worked more or less regularly after January 10, 1957, as found by the deputy.
The deputy further found that claimant had a serious personality problem which antedated the injury and was aggravated as a result thereof. This finding is unsupported by any evidence in the record. One or two of the treating physicians did comment in their reports that their examination of claimant revealed a personality problem, but neither of them stated when the problem arose or of what it consisted. Claimant affirmatively testified that he enjoyed excellent health all his life prior to the time of his injury, but that due to his inability to recover from the injury and regain his health thereby enabling him to earn an adequate living for his wife and three children, he became highly nervous and irritable. Not only is the deputy's findings not supported by any competent evidence, but we fail to understand what bearing such fact would have upon the resolution of the issues involved in this proceeding.
The deputy found that the attending orthopedic surgeon recommended back surgery during the course of treatment and prior to the attainment of maximum medical recovery, which surgery claimant refused. There is no evidence in the record to support this finding. Not only did the attending orthopedic surgeon not recommend surgery, but the neurologist subsequently employed by the compensation carrier to examine and treat claimant reported that he found no need for surgery and therefore did not recommend it in connection with his treatment of claimant.
The deputy found that the claimant attained maximum medical benefits in the absence of surgery on January 10, 1957, and was entitled to temporary total disability from the date of the accident to the date mentioned. There is no direct evidence in the record to support this finding. The *462 orthopedic surgeon to whom the compensation carrier first referred claimant for examination and treatment discharged claimant on January 10, 1957, and by his final report filed January 15, 1957, merely stated that he believed claimant could then return to light work at such employment level of which he might be capable. The doctor expressed no opinion as to whether claimant had then reached maximum medical recovery. To infer such fact from the mentioned report does violence to and is in direct conflict with the positive opinion rendered by the neurologist subsequently employed by the compensation carrier who, after consulting with and testing claimant over a period of some sixteen months, filed a report in which he expressed his opinion that claimant did not reach maximum medical recovery until May 21, 1958. It is moreover our view that any findings based upon this opinion would not accord with logic and reason because it is based solely upon the doctor's negative findings from the neurological tests to which he subjected claimant, without ever having determined the real cause of claimant's persistent and continued subjective complaints. The failure of this doctor to discover and cure the cause of the pain and suffering experienced by claimant cannot be construed as definitive of the question of claimant's maximum medical recovery in view of the evidence adduced from the neurosurgeon who subsequently examined, operated upon and treated claimant, which operation and treatment resulted in claimant's recovery from the effects of the compensable injury which he suffered. The findings and conclusions of the neurologist who last treated claimant have not been disputed. Since his qualifications as a specialist in his field were conceded by the compensation carrier, his testimony may not be either ignored nor disregarded in the absence of a logical explanation by the deputy for so doing.[1] He testified that he found and removed by surgery the cause of claimant's ailment, and as a result thereof claimant's health has been restored so far as is medically possible. He testified that prior to surgery claimant was totally disabled from performing the work he was doing at the time of his injury, and continued so disabled until the end of his convalescence from the operation on August 7, 1959. He testified that the surgery resulted in an 80% improvement in claimant's physical condition, and that after convalescence claimant has and will continue to have a 20% permanent partial disability of the body as a whole.
The deputy found that the employer and compensation carrier were not liable for the payment of the medical expenses incurred by claimant in connection with his operation by the last neurosurgeon who attended him. He based this conclusion upon the specific finding that claimant had employed the services of the neurosurgeon without having previously requested permission to do so of the employer or carrier. This finding is not only unsupported by any evidence, but is in direct conflict with the positive and unrefuted testimony of the claimant who testified that he sought permission to employ the neurosurgeon after the prior treatments he had received from the carrier's doctors had given him no relief, but that this request was rejected with the admonition that any further medical expenses which he incurred would have to be paid for by him. The deputy fortified his conclusion that the hospital and medical expenses incurred by claimant in connection with his operation were not compensable for the reason that the operating surgeon testified that after convalescence claimant would continue to suffer a 20% disability of the body as a whole, which is the same degree of permanent partial disability previously found to exist by the carrier's orthopedist and neurologist. The deputy therefore concluded that since claimant's permanent partial disability rating was the same after the operation as it was found to have been before the operation, that claimant received no benefits from the surgery. *463 Such a finding cannot be said to even approach logic or reason.
Having accepted as authoritative the testimony of the operating surgeon that following the operation claimant suffered a 20% permanent partial disability, the deputy could not without stated logical justification reject as unreliable the testimony given by the same surgeon on the related aspect of the situation to the effect that prior to surgery claimant was suffering 100% temporary total disability.
We have carefully examined the medical evidence in this record as well as the testimony adduced by claimant before the deputy. Nowhere do we find the slightest indication or hint that claimant was either a malingerer or was fabulating his subjective complaints of pain in his lower back or extremities. The Workmen's Compensation Act is remedial legislation intended to be liberally construed in such manner as to effectuate the purpose for which it was enacted. It is in this light that the facts in evidence must be considered and the issues resolved.
The Full Commission affirmed the deputy's order in a cursory opinion which recites as its authority the well known case of United States Casualty Company.[2] The cited decision promulgated the rule of law which has been consistently followed from the date of its rendition. It holds that the Deputy Commissioner's findings of fact should be upheld unless there is no competent substantial evidence which accords with logic and reason to sustain them. As pointed out above, the deputy's order in this case is replete with findings of fact which are not only unsustained by competent substantial evidence, but are in conflict with the only evidence in the record relating to the facts purported to be found by the deputy. In the Andrews case[3], the rule in Maryland Casualty Company was elaborated by the holding that the deputy's findings not only must be supported by competent substantial evidence, but the findings based on such evidence must accord with logic and reason. As shown above, the deputy's conclusions based upon the uncontradicted evidence in this case fail to meet this test and must therefore be rejected.
The questioned order is quashed with directions that the cause be remanded to the deputy for further consideration and the entry of an appropriate order consistent with the views expressed herein.
THOMAS, C.J., and ROBERTS, DREW and O'CONNELL, JJ., concur.
NOTES
[1] Andrews v. C.B.S. Division, etc., Fla. 1960, 118 So.2d 206.
[2] United States Casualty Company v. Maryland Casualty Company, Fla. 1951, 55 So.2d 741.
[3] Andrews v. C.B.S. Division, etc., see note 1.