395 So.2d 203 (1981)
FLORIDA ERECTION SERVICES, INC. and Risk Management Services Inc., Appellants,
v.
Raymer McDONALD, Appellee.
No. VV-150.
District Court of Appeal of Florida, First District.
February 23, 1981.
Rehearing Denied April 4, 1981.
*205 Robert D. McAliley, of Brennan, McAliley, Hayskar, McAliley & Deckert, W. Palm Beach, for appellants.
Richard A. Sicking and Gerald A. Rosenthal, of Kaplan, Sicking, Hessen, Sugarman, Rosenthal & DeCastro, Miami, for appellee.
SMITH, Judge.
The carrier appeals a workers' compensation award imposing penalties for late payment of wage loss benefits, and assessing attorney's fees against the carrier based upon a finding of "bad faith" in the handling of the claim. The attorney's fees question and certain aspects of the penalty ruling present issues of first impression before this court, and require consideration of the drastic 1979 amendments to the Workers' Compensation Law.
The claimant was injured in a compensable accident on September 20, 1979. The carrier paid temporary total disability benefits through December 5, 1979, on which date according to the report of the claimant's treating physician he reached maximum medical improvement, with permanent impairment. The carrier properly forwarded to the claimant the notice required by Section 440.185(10), Florida Statutes (1979) (and the appropriate rule) of his possible entitlement to wage loss benefits, along with instructions for claiming such benefits.
The claimant submitted his request for wage loss benefits for the period December 5, 1979 to January 5, 1980. The carrier received the wage loss request on January 7, 1980, but its claims supervisor determined that the portion required to be completed by the employer showing wages paid was incomplete, and, in addition the claimant sent only the carrier's copy of the four-part form supplied to him by the carrier. A formal claim submitted by claimant's attorney was received by the carrier on January 14, 1980. Without any further investigation (so far as the records shows) of the claimant's entitlement to wage loss benefits, the carrier rejected the claim, but instead of notifying the claimant immediately, it waited fourteen days from the date of receipt of the wage loss request before mailing a letter to the claimant explaining that the employer's portion should be completed, and that he should submit the remaining three parts of the claim form.
The claimant thereafter responded through his attorney, who filed an amended form in which was included "-00-" in the appropriate blank indicating no wages received during the wage loss period. Additional demands were made by the carrier for submission of the entire four-part form. Further correspondence ensued between the claimant's attorney and the carrier, each accusing the other of attempted circumvention of the new Workers' Compensation Law. Wage loss requests were also filed for the months of January and February. The January request was approved on March 7, 1980, and the February request was approved March 10, 1980.
A hearing was held pursuant to the requirements of Section 440.34(2)(b) for the sole purpose of determining liability for interest, penalties and attorney's fees. At the hearing before the deputy commissioner on March 10, 1980, the carrier also accepted and commenced payment of the claimant's wage loss benefits for the period December 5, 1979 to January 5, 1980. The claimant, meanwhile, suffered a total lack of wages *206 or wage loss benefits during the period from December 5, 1979 until March 7, 1980, the date on which the wage loss payments commenced. The deputy commissioner ordered payment of interest and a ten percent penalty for late payment, and awarded attorney's fees to claimant's attorney upon a finding of bad faith delay in payment of benefits.
We will first consider the assessment of a ten percent penalty. Section 440.20(7), Florida Statutes (1979), in pertinent part similar to former Section 440.20(5), Florida Statutes (1978), provides in part:
(7) If any installment of compensation for ... disability, permanent impairment, or wage loss payable without an award is not paid within fourteen days after it becomes due ... there shall be added to such unpaid installment a punitive penalty of an amount equal to ten percent ... unless notice [controverting claim] is filed ... or unless such nonpayment results from conditions over which the employer or carrier had no control.
Section 440.20(6) sets out the procedure to be followed if the carrier "controverts the right to compensation." Subsection (6) requires, among other things, that the notice set forth "the grounds upon which the right to compensation is controverted together with "a written explanation setting forth in detail the reason or reasons why the claim has been controverted.
On appeal, the carrier argues that it should be relieved of the penalty under the above statute because it filed a notice to controvert within twenty-one days, as required by Section 440.20(6). The deputy commissioner's order refutes this contention, and our review satisfies us that his ruling was correct. True, a notice to controvert was filed within twenty-one days of the carrier's receipt of the claimant's request for wage loss benefits. But the carrier's notice to controvert contains no mention of wage loss benefits. The notice contains a statement admitting payment of temporary total benefits from the date of accident to the date of maximum medical improvement, and contains a statement that the carrier controverts "any other benefits." Under the heading "Reason for Controverting," appearing on the notice form, as to "any other benefits," the notice states: "Not specific as required by W/C Rule 38F-3.10." The cited rule, Rule 38F-3.10, Florida Administrative Code, deals with claims generally, which are made using LES Form BCL-16. The rule specifically provides that wage loss claims shall be filed on LES Form BCL-13(b). The procedure for filing of wage loss claims, using Form BCL-13(b), is covered in Rule 3.18, Florida Administrative Code.
The notice to controvert, as to wage loss benefits, was insufficient under the statute. Even assuming that the wording "any other benefits" is broad enough to include the wage loss claim, it cannot be so construed in view of the specific reference to the rule governing claims generally, rather than Rule 3.18, the specific rule governing wage loss claims. More importantly, the notice did not comply with the requirements of subsection (6) in that it failed to specifically state "the grounds upon which the right to compensation is controverted," and the notice contained no "written explanation setting forth in detail the reason or reasons why the claim has been controverted." We note also from the record the carrier's concession "there was no Notice to Controvert filed over wageloss benefits," made through its attorney at the hearing before the deputy commissioner. The carrier's position on this appeal is thus contrary to the position taken below on this point. In our view the deputy commissioner correctly ruled that the notice to controvert did not comply with the statute, payment was not made within fourteen days, and the punitive penalty for late payment was properly assessed.
We next consider the assessment of attorney's fees under the "bad faith" provision. Section 440.34(2), Florida Statutes (1979), provides that a claimant shall be responsible for the payment of his own attorney's fees, except under limited circumstances set forth in subparagraph (a) of subsection (2), and except as provided in subparagraph (b), as follows:

*207 (b) In cases where the deputy commissioner issues an order finding that a carrier has acted in bad faith with regard to handling an injured worker's claim and the injured worker has suffered economic loss. For the purposes of this paragraph, "bad faith" means conduct by the carrier in the handling of a claim which amounts to fraud, malice, oppression or willful, wanton or reckless disregard of the rights of the claimant. Any determination of bad faith shall be made by the deputy commissioner through a separate fact-finding proceeding; ...
The carrier argues that the "bad faith" definition contained in Section 440.34(2)(b) tracks the longstanding case law dealing with punitive damages. See Winn and Lovett Grocery Company v. Archer, 126 Fla. 308, 171 So. 214 (1936), and General Finance Corp. of Jacksonville, Inc. v. Sexton, 155 So.2d 159 (Fla. 1st DCA 1963). It follows, according to the carrier, that acts amounting to bad faith under the statute must be of sufficient gravity to justify an award of punitive damages in a tort action, in accordance with the rule stated in General Finance Corp. of Jacksonville, Inc. v. Sexton, supra, at 162, as follows:
The general rule is that exemplary or punitive damages are given solely as punishment where torts are committed with fraud, actual malice, deliberate violence, or oppression or with such gross negligence as to indicate a wanton disregard of the rights of others. Punitive damages are damages in excess of compensation and are authorized to be inflicted when the wrong done partakes of a criminal character, though not punishable as such, or consists of aggravated misconduct or a lawless act resulting in injury to the plaintiff.
The carrier maintains that it cannot reasonably be inferred from the evidence of its actions that it was guilty of the type of malice, intent, or reckless disregard of the rights of the claimant that would support a recovery of punitive damages. By insisting that the claimant comply with the directions on the wage loss request form, the carrier states that it has done nothing except to act upon its belief as to the requirements of the new Workers' Compensation Law. The carrier relies upon language in General Finance Corp. of Jacksonville, Inc. v. Sexton, supra, in which the court noted a defense to a punitive damage claim, under certain circumstances, where the act was "committed by mistake in a bona fide assertion of a supposed right... ."
The carrier further asserts that since a statutory award of attorney's fees is in derogation of the common law, the statute awarding attorney's fees for bad faith must be strictly construed, citing Hartford Accident and Indemnity Company v. Smith, 366 So.2d 456 (Fla. 4th DCA 1978); Carlile v. Game and Fresh Water Fish Commission, 354 So.2d 362 (Fla. 1977); Allstate Mortgage Company v. Strasser, 277 So.2d 843 (Fla. 3rd DCA 1973), aff'd 286 So.2d 201 (Fla. 1975).
Finally, the carrier maintains that the elimination of Section 440.34(1), Florida Statutes (1978), providing for assessment of attorney's fees against the employer or carrier "if the claimant proves to the judge that the employer or carrier handled his claim in a negligent, arbitrary, or capricious manner," gives further indication that the 1979 amendment requires a showing of conduct warranting recovery of punitive damages.
Appellee urges that to invoke the statute it is not necessary to show conduct on the part of the carrier that would be sufficient for recovery of punitive damages in tort actions, or in actions based upon a contractual relationship in which one of the parties has committed wrongs amounting to a separate tort. Appellee argues for the application of a so-called "insurance standard" which he defines as "such a lesser degree of bad faith amounting to a disregard of the insured's rights without reasonable excuse."
Our study thus far has not provided us with a readily applicable "insurance standard." However, we agree with appellee that the punitive damage standard urged by appellant is not applicable, for the simple reason that the award of attorney's *208 fees incurred by the claimant does not partake of a necessary element of punitive damages  that is, reimbursement for his attorney's fees does not provide remuneration to the claimant over and above the amount necessary to compensate for his loss. Punitive damages are damages that "go beyond the actual damages suffered in the case... ." Richards Company v. Harrison, 262 So.2d 258 (Fla. 1st DCA 1972).
We have not overlooked the provisions of Section 440.34(2)(c), arguably punitive in nature, which prohibit the carrier from directly or indirectly recouping any such attorney's fees assessed against it in the rate base, premium, or any rate filing. We also would concede that the assessment of attorney's fees under these circumstances might tend to have a deterrent effect, but this does not require such an assessment to be regarded as "punitive damages." See Butchikas v. Travelers Indemnity Company, 343 So.2d 816 (Fla. 1977), in which the court held that an insured is "made whole" by an award of attorney's fees (plus compensatory damages) in bad faith actions against his insurer where the conduct of the insurer is not so egregious as to justify an award of punitive damages. Similarly, we conclude that a workers' compensation claimant is merely "made whole" by the award of attorney's fees, even though such an award may also furnish a "stimulus" to the insurer, as in Butchikas, supra. We observe that it has long been the law that the penalty provisions (10% and 20%) are insufficient to compensate a workers' compensation claimant for delay in receiving his benefits if he must make arrangements for and pay his own attorney's fees incurred in collecting benefits due him. City of Miami v. Schiffman, 144 So.2d 799 (Fla. 1962). The award of attorney's fees under the bad faith provision of the new act does no more than reimburse the claimant for expenses incurred in the assertion of his right to benefits.
We reject the notion that the operation of the statutory "bad faith" provision is limited to instances of "active concealment, misrepresentation, or continued course of dishonest dealing" as suggested by appellee. This was the test for recovery of punitive damages by an insured against his insurer in excess liability cases approved in Campbell v. Government Employees Ins. Co., 306 So.2d 525 (Fla. 1974). Compare Butchikas v. Travelers Indemnity Company, supra. The Campbell standard would furnish one basis for liability for attorney's fees under this statute. However, it is not the only test. Active concealment, misrepresentation, or a course of dishonest dealing can be classified as falling into the tort categories of "fraud" or "deceit." We find nothing in the Workers' Compensation Law to suggest that a workers' compensation carrier guilty of fraud or deceit might not also be subject to an award of punitive damages, as well as attorney's fees, although we are not called upon and do not decide that issue in this case. We do note, however, that the act itself has long contained a provision (Section 440.37(2)(e)) imposing liability for compensatory damages and attorney's fees against any insurer or its agent who "intentionally injures ... any claimant with regard to any claim." We agree with appellee's assertion that if the new bad faith provision for attorney's fees were intended to cover only intentional delay or denial of benefits injuring a claimant, the new provision would be somewhat superfluous.
In applying the bad faith statute it would be convenient to judge the conduct of the carrier by comparing that conduct with acts or omissions dealt with in the decisions on punitive damages, or "bad faith" generally on the part of insurers. In our opinion, however, such an application is neither required nor permitted. Although decisions dealing with punitive damages and bad faith on the part of an insurer in general might furnish some helpful guidelines for review of conduct under this statute, we nevertheless conclude that bad faith or punitive damage concepts governing liability in other relationships and under other circumstances cannot be transplanted mutatis mutandis to worker's compensation proceedings. "The law is not a mathematically *209 exact science. A perfectly sound principle as applied to one set of facts might be entirely inappropriate when a factual variant is introduced." Thornal, Justice, in Ward v. Baskin, 94 So.2d 859 (Fla. 1957). Since the relationship of the parties  employer, employee, and carrier  is unique in workers' compensation matters, being solely the creature of statute, we conclude that the bad faith language as used and defined in the statute must be given its own unique application. The language used must be construed according to its plain and ordinary meaning, consistent with the history and objectives of the workers' compensation law, interpretations of worker's compensation legislation in the past, the relationship between the affected parties, and the operation and function of the particular statutory provision read in the light of all other provisions of the law of which it forms a part.
Precedents which may now be considered as somewhat ancient tell us that workers' compensation is a product of industrialism that proceeds on the theory that economic loss to the individual caused by injury in line of duty should be borne in part by the industry in which he is employed in order that his dependents may not want. To establish his rights to benefits the claimant is not bound by the rigid rules of proof and interpretation that govern in criminal and law cases. Duff Hotel Co. v. Ficara, 150 Fla. 442, 7 So.2d 790 (1942). The fundamental purpose of workers' compensation is to relieve society of the burden of caring for an injured employee by placing the burden on the industry involved. Sullivan v. Mayo, 121 So.2d 424 (Fla. 1960).
Although formerly the philosophy of workers' compensation was that when the employer and the employee accepted the terms of the compensation act, their relationship became contractual, under later amendments to the workers' compensation law of Florida the application of the act to employer and the employee alike became mandatory. See Sections 440.10, .38 and .43, Florida Statutes (1979); compare Howze v. Lykes Bros., Inc., 64 So.2d 277 (Fla. 1953).
The purpose of workers' compensation acts is to provide for employers a liability that is limited and determinative, and to employees a remedy that is both expeditious and independent of proof of fault. McLean v. Mundy, 81 So.2d 501 (Fla. 1955). Workers' compensation acts constitute "social legislation, the design, intent, and purpose of which is to provide for injured workmen, and  if they should die from injuries received in their employment  for their dependents, in such a way that the burden may fall on the industry served, not on society." 35 Fla.Jur., Workmen's Compensation, § 4. The legislative intent was and is that the workers' compensation law should be self-executing, and that benefits should be paid without the necessity of any legal or administrative proceedings. A.B. Taff & Sons v. Clark, 110 So.2d 428 (Fla. 1st DCA 1959).
The employee-claimant and the carrier do not occupy the position of insured and insurer (cf. Baxter v. Royal Indemnity Company, 285 So.2d 652 (Fla. 1st DCA 1973)). Although the position of the claimant is akin to that of the injured automobile accident plaintiff (cf. Shingleton v. Bussey, 223 So.2d 713 (Fla. 1969)), in that the claimant is in a sense a "third party beneficiary" of the insurance coverage provided to the employer by the carrier, the obligations of the carrier to the claimant are not dependent upon the contract of insurance. They are mandated by the workers' compensation act itself. The act itself makes it clear that the obligations and duties of the employer and carrier are regarded as inseparable to the extent necessary to carry out the purpose of the law. Section 440.41, Florida Statutes (1979). To paraphrase from the opinion of Mr. Justice Ervin in Shingleton v. Bussey, supra, the business of providing worker's compensation insurance to employers "has connotations extending to the general public above and beyond the private interests of the two contracting parties." (Id. at 716). To the extent, therefore, that any action or inaction on the part of the carrier tends to frustrate the purposes of *210 the workers' compensation law, the potential burden on the part of the public to "pick up the slack" is proportionately increased.
No discussion of workers' compensation litigation would be complete without noting that the act is remedial legislation and intended to be liberally construed in such manner as to effectuate the purpose for which it was enacted, Gillespie v. Anderson, 123 So.2d 458 (Fla. 1960); a workers' compensation case is a peculiar class of legislation designed to accommodate the employer and the employee, to expedite claims, and should be so construed and executed, Lee v. Florida Pine & Cypress, 157 So.2d 513 (Fla. 1963); and the philosophy of the act is that an employee shall receive the benefits to which he is entitled with reasonable promptness, consistent with the employer's right to make a reasonable investigation regarding his liability, Thompson v. W.T. Edwards Tuberculosis Hospital, 164 So.2d 13 (Fla. 1964).
Under the act, every claim of an injured worker is aided by the presumption "in the absence of substantial evidence to the contrary," that the claim comes within the provisions of the law, and that sufficient notice of the claim has been given. Section 440.26, Florida Statutes (1979). And, contrary to the usual construction given to statutory provisions changing the common law, statutory provisions concerning attorney's fees in workers' compensation proceedings have received liberal construction. City of Miami Beach v. Schiffman, 144 So.2d 799 (Fla. 1962).
It is obvious that the 1979 amendments to the Workers' Compensation Law made the most drastic changes to that law in its history. We think it is generally conceded that the intentions of the new act were to provide increased benefits to severely injured workers, but at the same time to achieve a reduction in insurance premiums paid by the employer.[1] One of the principle ways in which the new act seeks to reduce costs is in the attempted elimination of potential areas of dispute and resulting litigation between the claimant and his employer, or the employer's carrier.[2]
The most significant of the 1979 changes is in the adoption of the "wage loss" concept for determining permanent partial disability as a substitute for the award of compensation, under the old law, on the basis of diminution of wage earning capacity or physical impairment. Consistent with the design and intention to reduce disputes and litigation the act also made significant changes in provisions relating to payment of attorney's fees to claimant's attorneys. Under the new act, the claimant pays his own attorney's fees as a general rule. Provision is made, however, for payment of attorney's fees by the carrier or employer in certain limited instances: when the claimant successfully asserts a claim for medical benefits only (Section 440.34(2)(a)), or when the claimant prevails on the issue of compensability after the same has been denied by the carrier or employer (Section 440.34(2)(c)). The third circumstance under which attorney's fees may be recovered is the "bad faith" provision of Section 440.34(2)(b) involved in this case.
The old workers' compensation law was designed so that a claimant ordinarily had no need to employ an attorney to process his claim.
... the act as a whole is so designed as to facilitate a claimant's prosecuting his own claim without the necessity of any assistance from an attorney. (City of Miami Beach v. Schiffman, 144 So.2d 799 (Fla. 1962)).
The recent changes in the act make it clear to us that there is even less reason to view the initiation of a claim by the injured worker as a matter requiring the services of *211 counsel. We note particularly that Section 440.185(4) imposes a duty upon the State Division of Workers' Compensation, Department of Labor and Employment Security, to provide information to the claimant, in "clear and understandable language." It further provides for review by the division of any notice or indication of injury. If it appears that the injury will result in permanent impairment, the Division shall contact the claimant, or members of his family, to assist the injured worker in securing any benefits to which he may be entitled. Section 440.19(1) requires the division to evaluate every claim for benefits filed under the law, to make a decision as to entitlement of benefits, and notify the parties. The decision of the division is not res judicata, but does become a part of the proceeding.
As a corollary to the expanded duties of the division, the 1979 amendments increased the burden upon the carrier to investigate and promptly resolve claims based upon their merit. Section 440.20(6) added the requirement that when a claim is controverted, the carrier must not only set forth the grounds upon which the right to compensation is controverted, it must also include a written explanation setting forth in detail the reason or reasons why the claim has been controverted. The penalty provisions of Section 440.20(7) have been modified so that penalties are now "punitive," and under subsection (17) no penalty assessed against any carrier or self-insurer can be recouped in the rate base, premium, or rate filing.
The division has been given additional responsibility, under Section 440.20(16)(a) to examine "on an ongoing basis" claims files in its possession in order to identify "questionable claims handling techniques, questionable patterns of claims, or a pattern of repeated unreasonably controverted claims by employers, carriers or self-insurers... ." Provision is further made for certification of its findings to the Department of Insurance. The division is also required under subsection (10)(b) in any case where the right to compensation is controverted, or where payments of compensation have been stopped or suspended, upon receipt of notice to that effect, to make investigations, have medical examination made, hold hearings, and take such further action "as it considers will properly protect the rights of all parties."
The self-executing tenor of the new act is emphasized further by the reenactment of provisions effectively discouraging the claimant's resort to legal assistance in the early stages of a worker's compensation proceeding. Section 440.34 provides that no attorney's fees may be paid for services rendered for a claimant in connection with any proceedings under the law unless approved as reasonable by the deputy commissioner, or the court having jurisdiction over such proceedings. Under subsection (4)(a), any attorney who receives any fees or other consideration or any gratuity on account of services rendered to an injured worker, unless such consideration or gratuity is approved by the deputy commissioner or the court, is guilty of a criminal act (misdemeanor of the second degree), punishable as provided by law.[3]
It is our conclusion that the 1979 changes, partially reviewed here, give ample notice that the new Workers' Compensation Law will not tolerate passive disapproval and rejection of claims on mere technical matters of form. The delay or denial of payment, without a showing of active effort and initiative on the part of the carrier to fairly and expeditiously determine its obligation to place needed benefits in the hands of the injured worker is totally inconsistent, in our view, with the notion that a claimant is entitled under this law to have his benefits paid without the necessity of first seeking the advice and services of an attorney for the simple purpose of making his claim of entitlement to benefits known to the carrier.
*212 We note here that the carrier presented no evidence at the hearing in justification of its failure to process this routine request for wage loss benefits. The correspondence introduced into evidence discloses only that the benefits were denied because the claimant failed to send in all four copies of the four-part form, sending only the one designated as "carrier's copy" to the carrier. It also appears that the portion of the form in which the employer would normally enter the amount of wages paid during the period was left blank. We are not impressed by the argument that the carrier was simply under a mistaken impression concerning the technical requirements of the act. The request for wage loss benefits here was adequate, under Section 440.20(4) to give "knowledge" of his claim, which is all that is required.
The division is authorized by Section 440.185(10) to provide by rule for reporting wage loss claims. Rule 3.18(2), Florida Administrative Code, designates only the official form number to be used in filing a wage loss claim. The rule contains no mention of copies. The rule contains no warning that failure to file any specific number of copies is fatal to the claim; and in our view any rule or statute so providing would be inconsistent with the self-executing concept that is the sine qua non of worker's compensation legislation. Although the division has authority to "prescribe forms" for reporting wage loss requests, there is nothing sacrosanct about any particular form. See Ezell-Tillerton Inc. v. A.K.T., 234 So.2d 360 (Fla. 1970), in which it was held that a notice to controvert in substantial compliance with the prescribed form was sufficient though not appearing on a form specified by the statute.
The rule (Rule 3.18, Florida Administrative Code) further provides: "The wages reported shall be attested to by the employer paying those wages." The form contains space for the employer to report earnings during the period for which wage loss benefits are claimed, and both the rule and the form contemplate that the form should be submitted by the claimant to the employer to report wages paid to the employee during that period. However, we can readily understand how the claimant (or any claimant) could conclude that it was unnecessary to present the form to his employer, who paid no wages, since both the rule and the form provide for the employer to make a report only if he is one "paying those wages."
We find it inconceivable that in the two-week period between the receipt of the request for wage loss benefits and the carrier's first letter to the claimant this simple claim could not have been processed, with or without the further assistance of the claimant, and without taxing the manpower or facilities of the carrier, the employer, or the Division of Workers' Compensation in Tallahassee. The further withholding of needed benefits for more than six additional weeks adds further justification, in our opinion, for a finding that the carrier's conduct in the handling of this claim amounts to "oppression," or "willful ... or reckless disregard of the rights of the claimant." Section 440.34(2)(b).[4]
Finally, we acknowledge that the statutory provision in question can be likened to punitive damages in that (as for an award of punitive damages) the ultimate decision for assessment of attorney's fees rests with the finder of fact  in this case, the deputy commissioner. The deputy's order reads in part as follows:
Having considered the arguments of both counsels [sic] as well as the documentary evidence, I find that the servicing agent acted in bad faith in the handling of the claim. There was no question that the claimant was due wage loss benefits. The carrier's position was that the claimant's attorney did not properly fill out the Request for Wage Loss Benefits form, nor did he comply with the instructions in mailing the forms to the carrier. Claimant's *213 attorney argued that the carrier should have paid wage loss benefits timely when the claimant first sent the original request for wage loss form in January of 1980 on benefits from December 5, 1979 to January 5, 1980. I find that the claimant's one page request for wage loss form was correctly filled out and provided the carrier with sufficient information to pay wage loss benefits. The carrier's request for the additional copies should have in no way affected its obligation to pay the wage loss benefits upon its initial receipt of the wage loss form. I agree with the claimant's counsel's position that the carrier acted in bad faith. I find that the carrier acted in an oppressive manner in holding up the wage loss benefits in what amounted to a separate dispute with the claimant's attorney. I find that the carrier's position resulted in an unfair burden upon the claimant who ultimately has the right to expect timely payments of benefits from the carrier.
It is, therefore, my finding that the carrier is guilty of bad faith handling of the above captioned case.
It is obvious to us that if the act is to be truly self-executing, and if it is to accomplish the purpose of providing greater and more equitable benefits to the severely injured worker, while at the same time reducing premium costs to the employer, a broad discretion must necessarily vest in the deputy commissioner to measure the actions of the carrier in the light of his judgment, experience and knowledge, and in accordance with the provisions of the statute. Unless we find a clear abuse of discretion, or departure from the law, the decisions of the deputy commissioners under this provision will be upheld.
For the foregoing reasons, the order appealed from is
AFFIRMED.
LILES, WOODIE A., Associate Judge (Ret.), and PEARSON, TILLMAN, Associate Judge (Ret.), concur.
NOTES
[1] See "The 1979 Florida Workers' Compensation Reform: Back to Basics," a scholarly review of the new act by Sadowski, Herzog, Butler and Gokel, Florida State University Law Review, Vol. 7, No. 4 (Fall 1979). Whether and to what extent the new act has or will accomplish its desired purposes, as convincingly explicated by the authors of this law review, are matters not before us for consideration.
[2] Id., pp. 649-654.
[3] This provision, appearing in the prior law as Section 440.34(5), Florida Statutes (Supp. 1978) was not retained in Chapter 79-40, Laws of Florida (1979), but was subsequently reenacted in Chapter 79 312, Laws of Florida (1979).
[4] See Alpert, Florida Workmen's Compensation Law, Third Edition, 1980 Supplement, § 16 3.