401 So.2d 1388 (1981)
SAM ROGERS ENTERPRISES and Auto-Owners Insurance Company, Appellants,
v.
Odell WILLIAMS, Appellee.
No. XX-152.
District Court of Appeal of Florida, First District.
August 17, 1981.
*1389 John K. Vreeland of Lane, Trohn, Bertrand, Williams & Smith, Lakeland, for appellants.
Kenneth C. Glover, Lakeland, for appellee.
JOANOS, Judge.
In this workers' compensation appeal, the employer/carrier challenges the deputy commissioner's order which found that the employer's bad faith refusal to notify the carrier of the claim imputed bad faith to the carrier. As a result, the carrier was ordered to pay the claimant's attorney's fees pursuant to § 440.34(2)(b), Florida Statutes (1979).[1] The employer/carrier asserts that the deputy erred in two respects: first, § 440.34(2)(b) applies only to acts of bad faith attributable solely to the carrier; and second, even if the employer's acts can be imputed to the carrier, those acts did not meet the definition of "bad faith" provided for in the statute. We reject both of these arguments and affirm the deputy's order.
On October 25, 1979 the claimant was injured in a work-related accident. When he was admitted into the hospital on the same day, the admissions report reflected that Sam Rogers Enterprises was the employer and that the injury was a "possible workmen's compensation." The claimant's wife testified that she asked the admissions clerk to call Sam Rogers Enterprises to verify hospitalization coverage. According to Mrs. Williams, the clerk did make a telephone call but, as a result of the information obtained by the call, the claimant was required to be admitted under his group insurance policy rather than workers' compensation coverage.
While the claimant was in the hospital for three weeks, Mrs. Williams stated that she made numerous attempts to verify whether the claimant's medical expenses would be covered by workers' compensation. She testified that she went to the employer's office on three occasions, each time asking to speak with Sam Rogers (the owner) and stating the purpose of her visit. Although she saw Mr. Rogers on the premises, she was never able to talk with him and he never called her with regard to the messages she left. Mrs. Williams then went to claimant's supervisor, who assured her that claimant would receive workers' compensation coverage but also advised her to talk with Mr. Rogers. Despite the supervisor's assurances, claimant's medical expenses were not paid. Finally, on November 26th, claimant sought legal advice.
According to the stipulated testimony of the carrier's insurance clerk (her statement was lost in recording), Auto Owner's did not receive actual notice of the injury from the employer until November 26, 1979. The carrier proceeded to pay compensation benefits to claimant on November 30th.
The deputy commissioner found that the employer's actions in this case were in bad faith and caused economic loss to the claimant. Although § 440.34(2)(b) refers only to the carrier's bad faith in the handling of the claim, the deputy imputed bad faith to the carrier through § 440.41(1), Florida Statutes (1979), which provides:
In any case where the employer is not a self-insurer, in order that the liability for compensation imposed by this chapter may be most effectively discharged by the employer, and in order that the administration of this chapter in respect of *1390 such liability may be facilitated, the division shall by regulation provide for the discharge, by the carrier for such employer, of such obligations and duties of the employer in respect of such liability, imposed by this chapter upon the employer, as it considers proper in order to effectuate the provisions of this chapter. For such purposes:
(1) Notice to or knowledge of an employer of the occurrence of the injury shall be notice to or knowledge of the carrier.
The deputy reasoned that under § 440.41, the employer was the carrier's alter ego for purposes of § 440.34(2)(b) and the manner in which the claim was handled. Therefore, concluded the deputy, even though the carrier was diligent in responding to the claim once it received actual notice of the injury, § 440.41(1) imputes the employer's knowledge of the injury and its dilatory tactics in handling the claim to the carrier.
The employer/carrier disagrees with the deputy's statutory interpretation and argues that § 440.34(2)(b) was not intended to apply to an employer's wrongful acts. In oral argument, the employer/carrier referred to several statutory provisions in an effort to shed light on the legislative intent of § 440.34(2)(b). Under § 440.34(2), any payment of attorney's fees that is required by subsection (b) may not "be recouped, directly or indirectly, by any carrier in the rate base, premium, or any rate filing." This provision, in effect, makes the carrier fully responsible for attorney's fees under subsection (b) while relieving the employer from even indirect liability for those fees. The employer/carrier argues that it is illogical as well as unfair to require a carrier which has acted without fault to bear the full penalty for wrongful acts which were committed by the employer. In conjunction with this argument, the employer/carrier also contends that § 440.41's provision imputing the employer's knowledge or notice to the carrier applies only to impute an employer's liability for "compensation" to the carrier and does not operate to impute liability for a "penalty" provision such as § 440.34(2).
In response to the claimant's contention that § 440.34(2)(b) was clearly intended to prevent exactly the type of recalcitrant conduct engaged in by the employer in this case, the employer/carrier points to § 440.185(2) and (9). Those sections provide for a $100 civil penalty to be assessed against an employer who fails to notify the carrier of an injury within 7 days of receiving actual knowledge of the injury. The employer/carrier argues that the civil penalty is the counterpart to the attorney's fees "penalty" assessed against the carrier for bad faith.
A common thread in each of the employer/carrier's arguments is the proposition that § 440.34(2)(b) is a penalty provision. The claimant contends, however, that bad faith in handling of the claim forced him to seek the assistance of an attorney; therefore, an assessment of attorney's fees is really only a recovery of the claimant's monetary damages rather than punitive damages. Under this rationale § 440.41(1) would operate to impute notice to the carrier since that section was intended to assist in the effective administration and discharge of "liability for compensation."
Claimant's analysis of the purpose and effect of § 440.34(2)(b) coincides nicely with this Court's recent decision in Florida Erection Services, Inc. v. McDonald, 395 So.2d 203 (Fla. 1st DCA 1981). In that case, the carrier argued that "bad faith" under § 440.34(2)(b) should be defined by the strict interpretation given that term in cases dealing with punitive damages. As in the case before us, the carrier's basic assumption was that § 440.34(2)(b) was primarily intended to be a penalty provision. We reject this assumption for the same reasons that it was rejected in McDonald.
Every provision of the Workers' Compensation Act should be construed in keeping with the remedial purpose of the act as a whole. As its primary function, the act was intended to place the burden of supporting an injured worker on industry rather than society. Sullivan v. Mayo, 121 So.2d 424 (Fla. 1960). To effectuate that *1391 function most efficiently, the legislature intended that the worker have a relatively quick and simple method of recovery and that the employer's liability limits be well-defined. As stated in McDonald, "the philosophy of the act is that an employee shall receive the benefits to which he is entitled with reasonable promptness, consistent with the employer's right to make a reasonable investigation regarding his liability." 395 So.2d at 210.
The amendments to the new (1979) act emphasize that the provisions entitling the claimant to benefits should be self-executing, without the necessity (and inevitable delay) of administrative or legal assistance. For this reason, a claimant is now generally required to pay his or her own attorney's fees. The limited instances where attorney's fees are awardable, however, involve occasions where the employer/carrier's actions in totally rejecting the claim for disability (§ 440.34(2)(c)) or medial benefits (§ 440.34(2)(a)) or, as in this case, in ignoring and mishandling the claim (§ 440.34(2)(b)) necessitated the claimant's use of legal assistance to recover payment of benefits. Therefore, the court in McDonald concluded that the "award of attorney's fees under the bad faith provision of the new act does no more than reimburse the claimant for expenses incurred in the assertion of his right to benefits." 395 So.2d at 208.
Despite the obvious deterrent effect, the attorney's fee award of § 440.34(2)(b) was clearly intended to compensate the claimant for the monetary losses sustained in trying to force some action on the claim. Admittedly, § 440.34(2)(b) refers only to the carrier's bad faith in handling the claim. It seems to us, however, that § 440.41, which has as its stated purpose the effective administration and discharge of liability for compensation, should impute the employer's notice of the claim to the carrier. To hold otherwise would frustrate both the general intent of the Workers' Compensation Act as well as the specific intent of § 440.41. Requiring the claimant to pay for attorney's fees which were necessitated by the employer's action would be inconsistent with the purpose of placing the burden of work-related injuries on the industry. By the same token, liability for the monetary damages suffered by the claimant as a result of delayed notice would certainly not be "effectively discharged" if the employer's notice could not be imputed to the carrier under § 440.41(1).
In reaching this result, we have not neglected or ignored § 440.34(2), which prevents the carrier from recovering the attorney's fees payment from the dilatory employer. Where, as in this case, the carrier has acted diligently, this provision does seem to result in an unfair burden on the carrier. Unfortunately, the legislature has left us with a situation where any decision we make will result in an inconsistency. We have chosen to construe § 440.34(2)(b) consistently with § 440.41 and the purpose of the Workers' Compensation Act. This interpretation is in keeping with our obligation to construe remedial legislation "in such a manner as to effectuate the purpose for which it was enacted." McDonald, 395 So.2d at 210, citing Gillespie v. Anderson, 123 So.2d 458 (Fla. 1960).
AFFIRMED.
MILLS and SHAW, JJ., concur.
NOTES
[1] Section 440.34(2)(b) entitled a claimant to recover attorney's fees from a carrier or employer:

"In cases where the deputy commissioner issues an order finding that a carrier has acted in bad faith with regard to handling an injured worker's claim and the injured worker has suffered economic loss. For purposes of this paragraph, `bad faith' means conduct by the carrier in handling of a claim which amounts to fraud, malice, oppression, or willful, wanton or reckless disregard of the rights of the claimant...."