437 So.2d 754 (1983)
RUSTY PELICAN RESTAURANT and Continental Insurance Company, Appellants,
v.
Pedro GARCIA, Appellee.
No. AO-114.
District Court of Appeal of Florida, First District.
September 9, 1983.
*755 Bernard I. Probst and Kathleen M. O'Connor, of Walton, Lantaff, Schroeder & Carson, Miami, for appellants.
Mark L. Zientz, of Williams & Zientz, Coral Gables, for appellee.
ERVIN, Chief Judge.
The employer/carrier (E/C) appeals from an order of the Deputy Commissioner (DC), awarding $15,500 in attorney's fees to claimant's attorney, which found the E/C acted in bad faith in controverting the employee's claims for compensation and, as to those benefits voluntarily paid by the E/C, in failing to include the reasonable value of meals in the employee's average weekly wage (AWW). The E/C contends that the DC should not have awarded an attorney's fee calculated as a percentage of all benefits paid to Garcia after the filing of his claim. We agree with the E/C that Garcia's right to compensation was not controverted and that the temporary suspension of benefits did not amount to bad faith, but also agree that the failure of the E/C to include the reasonable value of meals in Garcia's AWW did amount to bad faith, and therefore we modify the attorney's fee order and remand for further consistent proceedings.
On March 4, 1980, Garcia sustained an industrial injury, causing him to lose sight in his right eye, when a wooden salt shaker fell from a shelf and struck him on the back of his head. At the time of the injury, Garcia was a 67-year old dishwasher at employer's restaurant. The injury was accepted as compensable by the E/C for which temporary total disability (TTD) benefits were paid from March 17 through May 13, 1980. Garcia was treated for the injury by Dr. Ring, who diagnosed a hemorrhage in his right eye, and observed that Garcia had already become legally blind in his left eye, before the March 4 accident, as the result of a cataract condition. Dr. Ring released Garcia to return to work on May 1, 1980 and thereafter, on July 1, 1980, Garcia suffered another hemorrhage in his right eye while lifting a heavy object at work.
Garcia came under the care of Dr. Davis on July 9, 1980, who determined that he had a retinal tear and vitreous hemorrhage in the right eye, thereby requiring that he perform a cyro treatment on the right eye. Even after this procedure, the right eye continued to do poorly and his vision deteriorated to the level of 5/200 as of April 16, 1981, when Dr. Davis opined that Garcia had reached maximum medical improvement (MMI), with 100% permanency of impairment of the right eye. Dr. Davis gave his opinion that Garcia could not resume any meaningful work as he was legally blind in both eyes.
The E/C recommended payment of TTD benefits on July 14, 1980, based on a reaggravation of the March 4 injury; however, on August 26, 1980, the E/C suspended compensation by forwarding a notice disclosing *756 that the TTD benefits had been terminated or suspended as of August 11, 1980, on the ground that Garcia's disability was unrelated to the job accident. The notice referred to an entry in the adjuster's activity report, made on August 25, while the customary adjuster was away on vacation, which referred to a conversation with Dr. Davis who reportedly advised that Garcia was "[n]ot released to return to work yet due to left-eye surgery." (e.s.) Once the regularly employed adjuster returned from vacation, he called Dr. Davis on August 29 to clarify the situation, and upon learning that the right eye was still disabling Garcia, resumed the TTD benefits by posting a check from the E/C to Garcia on September 8, which back-dated all payments from the date of suspension. The benefits voluntarily paid by the E/C were based on a calculation of the AWW as $144, which did not include the reasonable value of meals which the employee had received on the job as part of his remuneration.
Before the notice of suspension of benefits was forwarded to the employee, he filed his first claim for benefits on August 25, 1980, prepared on August 22, requesting permanent partial disability (PPD), and/or permanent total disability (PTD) benefits. An amended claim was filed July 21, 1981, wherein Garcia requested TTD or temporary partial disability (TPD) from March 4, 1980 until April 16, 1981, as well as a determination of his AWW to include the value of meals, penalties and interest of late payments, and nursing services. The E/C voluntarily accepted Garcia as permanently and totally disabled, effective June 24, 1981 as per the June 24, 1981 deposition of Dr. Davis. The DC entered an order on April 22, 1982, adjusting the compensation rate upward to $152.05 to reflect an inclusion of the value of meals in Garcia's AWW, awarding TTD from March 17 through May 1 of 1980, and from July 3, 1980 through June 23, 1981, and awarding PTD from April 16, 1981. The DC subsequently, on August 12, 1982, entered the order appealed, awarding $15,500 in attorney's fees to Garcia's attorney. The DC found that approximately 61 hours were spent by Garcia's attorney in the successful prosecution of the claim, yielding approximately $85,000 in compensation plus supplemental benefits, and upon consideration of the statutory criteria in Section 440.34, Florida Statutes (1979), the DC noted that the facts and circumstances of the case did not warrant any departure from the statutory guidelines of 15% of the benefits secured.
We agree with the E/C's contention that the notice suspending payment of TTD benefits as of August 11, 1980 did not amount to a denial of compensation, i.e., that an injury occurred for which compensation benefits were payable.[1] To the contrary, the E/C promptly regarded the March 4 injury as compensable, and paid TTD benefits to Garcia when appropriate from the time of the injury until August 11. The E/C ceased making payments on that date based on erroneous information pursuant to a conversation with Dr. Davis that Garcia was disabled due to surgery on his left eye, whereas the injury had affected his right eye. As soon as the E/C's regular adjuster returned from vacation, he called Dr. Davis to verify the cause of Garcia's disability and, upon learning that Garcia was still recovering from his work-related right eye disability, TTD benefits were resumed as of September 8, 1980, retroactive to the date they were suspended.
The situation here is similar to that in City of Tampa v. Kopkau, 429 So.2d 381 (Fla. 1st DCA 1983), in which we reversed an attorney's fee award pursuant to Section 440.34(2)(c), Florida Statutes (1979). There, the claimant had received compensation benefits stemming from a 1972 work-related injury as well as benefits voluntarily paid by the E/C for a 1979 work-related *757 injury. The E/C ceased payment of benefits for the 1979 injury on the basis of medical reports disclosing that the claimant's disability was no longer a result of the 1979 accident and the E/C reasonably, but mistakenly, concluded that the claimant had reverted to his 1972 condition. Upon realizing its mistake that the claimant's disability was in fact caused by the 1979 accident, the E/C issued a check for the deficiency and voluntarily resumed payments for the 1979 injury. We determined in Kopkau that the E/C did not deny that a compensable injury occurred, stating: "When an employer/carrier admits an accident and pays some disability benefits but denies others are due, an attorney's fee is not awardable under Section 440.34(2)(c), Florida Statutes (1979)." See also Ardmore Farms, Inc. v. Squires, 395 So.2d 268 (Fla. 1st DCA 1981); Walt Disney World Co. v. May, 397 So.2d 1003 (Fla. 1st DCA 1981); City of Miami v. Wright, 414 So.2d 24 (Fla. 1st DCA 1982); Four Quarters Habitat, Inc. v. Miller, 405 So.2d 475 (Fla. 1st DCA 1981). Accordingly, the DC's award of an attorney's fee pursuant to the denial of compensation benefits provisions of the statute is reversed.
In addition to its finding that the E/C acted in bad faith in formally controverting the claim, the deputy found that the E/C's suspension of benefits was so arbitrary as to constitute bad faith. We reverse this finding as well. Both the controversion and the suspension were caused by the same circumstance: the mistaken report by the temporary adjuster disclosing that the employee's condition was not industrially related. The suspension of benefits was not arbitrary under the circumstances, as there was some justification for the E/C's belief that Garcia was not entitled to continued TTD benefits, and the E/C conducted a reasonable investigation within a reasonable time. See Exceptional Children's Home & Nursery, Inc. v. Fortuna, 414 So.2d 1130 (Fla. 1st DCA 1982). The delay was not an intentional disregard of Garcia's rights and cannot be considered a passive rejection of a claim based merely on a technical matter of form by an E/C having knowledge of a valid entitlement to benefits. See Florida Erection Services, Inc. v. McDonald, 395 So.2d 203 (Fla. 1st DCA 1981). In McDonald, we observed that the award of attorney's fees under the bad faith provisions of the 1979 act "does no more than reimburse the claimant for expenses incurred in the assertion of his right to benefits." Id. at 208. Here, the TTD benefits were promptly and voluntarily resumed and retroactively paid by the E/C, nor did it become necessary for Garcia's attorney to undergo measures to compel the E/C to comply with its obligations. See Greynolds Park Manor v. George, 423 So.2d 485 (Fla. 1st DCA 1982).
As to the E/C's failure to include the reasonable value of meals in Garcia's AWW however, we agree that the E/C's action was tantamount to bad faith. In so saying, we note that it is proper to include any benefit which assists an employee to meet his personal expenses, such as the fair market value of meals provided by the employer, in calculating the claimant's AWW. See Fair-Way Restaurant v. Fair, 425 So.2d 115 (Fla. 1st DCA 1982). The record before us shows that although Garcia did not file a claim requesting that his AWW should include the value of meals until July 16, 1981, the E/C resisted the claim and did not agree to pay the higher rate until after the final hearing, which was conducted on September 10, 1981. As we find that the E/C's failure to include such amounts resulted in an economic loss to Garcia, see Greynolds Park Manor, 423 So.2d at 487; Barosy v. Landscape Crane, 418 So.2d 400 (Fla. 1st DCA 1982), and that Garcia had to incur legal expenses to assert his right to the inclusion of the value of meals in his AWW, we agree that the E/C's cumulative actions demonstrated bad faith in the handling of the claim.
In view of our findings and conclusions herein stated, we do not find it necessary to address the final issue raised by the E/C with respect to the calculation of the attorney's fees as a percentage of all benefits paid to Garcia after the filing of his claim.
*758 The fee award entered is REVERSED and the cause is REMANDED to the deputy to compute the fee amount on the basis of the effort expended by claimant's attorney in securing the proper amount of AWW.
THOMPSON and WIGGINTON, JJ., concur.
NOTES
[1] Section 440.34(2)(c), Florida Statutes (1979) provides that claimant is entitled to attorney fees:

(c) In a proceeding where a carrier or employer denies that an injury occurred for which compensation benefits are payable, and the claimant prevails on the issue of compensability.