414 So.2d 1130 (1982)
The EXCEPTIONAL CHILDREN'S HOME & NURSERY, INC., and Insurance Company of North America, Appellants,
v.
Madeline FORTUNA, Appellee.
No. AF-175.
District Court of Appeal of Florida, First District.
June 8, 1982.
H. George Kagan, Miller, Hodges & Kagan, Miami, for appellants.
Mark J. Feldman, Miami, for appellee.
LARRY G. SMITH, Judge.
The employer/carrier appeal an order awarding claimant attorney's fees pursuant to Section 440.34(2), Florida Statutes (1979). The deputy commissioner determined that the carrier's handling of the claim was improper in four separate instances: (1) the carrier delayed too long the payment of claimant's hospital bill in the amount of $19,569.76; (2) the carrier delayed too long the payment of attendant care services performed by the claimant's mother on her behalf; (3) the carrier delayed too long the authorization for claimant's admission to a pain clinic; and (4) the carrier was guilty of bad faith in adjusting downward the claimant's compensation rate by a total of $2.66 per week for an eight week period from November 6, 1979, through January 3, 1980. *1131 The carrier urges on appeal that the purported delays were not unreasonable under the circumstances and that the adjustment of the compensation rate, accomplished only after the carrier had made an independent investigation, was the result of an honest error based upon documentary evidence capable of disparate interpretations. We agree and reverse.
Initially, we would point out that the deputy's order does not indicate under which provision of Section 440.34(2) the attorney's fees were awarded in the first three instances. Clearly they were not awarded under Section 440.34(2)(c) since the carrier admitted compensability and paid some benefits. Four Quarters Habitat, Inc. v. Miller, 405 So.2d 475 (Fla. 1st DCA 1981). Claimant's lawyer argued below that fees were awardable under either Section 440.34(2)(a) or (b). However, on appeal he appears to have retreated from the position that the award of fees with respect to items (2) and (3) above was based on the bad faith provision, Section 440.34(2)(b), and insists that Section 440.34(2)(a) is the basis for the award in these instances. This position is untenable.
Under Section 440.34(2)(a), a claimant can recover a reasonable attorney's fee from a carrier or employer against whom he has successfully asserted a claim for medical benefits only, if the claimant has not filed or is not entitled to file a claim for disability or certain other benefits. Here, in the claim for the hospital bill filed with the Division on October 30, 1979, and the amended claim filed November 9, 1979, claimant claimed temporary total disability benefits were due from September 4, 1979 to date. Although the record indicates these benefits were paid, this claim was never withdrawn. Thus, claimant is not entitled to an attorney's fee under Section 440.34(2)(a). Bailey v. Hawes Chrysler-Plymouth, 410 So.2d 986 (Fla. 1st DCA 1982).
Although there is some confusion as to the extent of the claimant's reliance upon the bad faith provision, the carrier argued on appeal that the deputy's order impliedly found the carrier guilty of bad faith in each of the four instances outlined above. In this posture of the case, if we agreed with the carrier's contention and found the evidence sufficient to support a finding of bad faith across the board, we would be compelled to affirm the order appealed. We have therefore undertaken a review of the evidence adduced at the hearing below (which was confined to the attorney's fees issue) and, in considering the evidence in the light most favorable to the claimant, we have considered each of the instances of alleged improper handling in isolation, as well as in relation to each other, to determine whether the record justifies a finding of bad faith. We conclude that it does not.
We first revert briefly to this court's view of the bad faith provision, Section 440.34(2)(b), as explicated in Florida Erection Services, Inc. v. McDonald, 395 So.2d 203 (Fla. 1st DCA 1981). In that case, this court recognized an employee's right to receive benefits with reasonable promptness. However, balanced against that right, is the employer/carrier's right to make a reasonable investigation regarding liability, and to have a reasonable opportunity to comply with the demands made, depending upon the exigencies of the particular request and the statutory duties and obligations pertinent to it. Based upon our review of the four episodes of alleged mishandling outlined in the deputy's order, in the light of the discussion contained in Florida Erection Services, we are compelled to hold that the carrier's conduct here, although perhaps not a model for the industry, is lacking in the display of unreasonableness required for a showing of malice, oppression, or willful, wanton, or reckless disregard of the rights of the claimant.
With respect to payment of the hospital bill, claimant was injured on September 4, 1979 and was hospitalized for approximately one month. Sometime thereafter, the hospital sent the itemized bill and a summary of the bill to the claimant's attorney at his behest. On October 22, claimant's attorney mailed a copy of the summary of the bill to the carrier. He did not forward to *1132 the carrier a copy of the itemized bill. On October 25, 1979, claimant's attorney mailed a claim for payment of the hospital bill which was filed with the Division on October 30, 1979. The carrier delayed the payment of this bill, and instead, asked the hospital to furnish an itemized statement. At the same time, the carrier wrote claimant's attorney acknowledging receipt of the summary and advising that an itemized bill was being requested. On November 9, the carrier received a response from the hospital indicating that it was in the process of preparing and would shortly forward to the carrier a copy of the itemized bill. On November 26, the carrier received from the hospital the same summary bill that had been previously furnished to the carrier by claimant's counsel. Rather than delay payment any longer, the carrier paid the hospital bill on December 5, 1979.
The deputy reasoned that since the carrier paid the second summary bill, although it contained the same information as the first bill, the carrier had delayed unreasonably long in waiting thirty-six days after the claim had been filed to pay the bill and thus claimant's counsel was entitled to a fee based on the entire amount of the bill. With this, we must respectfully disagree. The carrier demonstrated at the hearing before the deputy that it routinely, as a cautionary measure, requested itemized bills, particularly large ones (this one amounted to nearly $20,000.00), based upon its experience that such bills often contain error (a fact recognized by the deputy). It was the carrier's practice to submit such bills to a computer service for analysis. Thus, instead of being a "delaying tactic," the procedure followed here was consistent with sound business practice. Notwithstanding this, the fact that the carrier ultimately paid the hospital bill based on the summary, without waiting for the itemization, may tend to cast doubt on the good faith of the carrier's actions in the first instance. However there are other factors involved in this controversy which would preclude a finding of bad faith.
Section 440.13(1) requires that hospital bills be forwarded to the employer or carrier within ten days. Board of County Commissioners of Dade County v. Southern Florida Sanitary and Hospital Corporation, 173 So.2d 131 (Fla. 1965). This was not done here because claimant's counsel had the bill sent to him, which in itself tended to frustrate the self-executing design of the worker's compensation law, and contributed to the delay he claimed to be so unreasonable. It was not unreasonable for the carrier to request a copy of the itemized bill, and at the time the carrier requested the itemized bill from the hospital, the claimant's attorney actually had an itemized bill in his file, yet he did nothing toward providing this information to the carrier. His only explanation for failure to send the itemized bill to the carrier was  "it was too bulky." The delay in payment, even assuming it to be unreasonable, cannot be attributed entirely to the carrier.
Next we consider the attendant care services provided to the claimant by her mother at home during the period of October 6, 1979 to November 20, 1979. Claimant's lawyer filed a claim for payment of these services November 20, 1979. On November 30, claimant's lawyer sent a letter to the carrier's claims representative enclosing a copy of a letter from Dr. Millheiser, claimant's treating physician, indicating that claimant needed a homemaker to assist her. In the letter, claimant's lawyer asked the representative to contact him regarding payment for the services. This letter was received on December 3. Four days later the representative called claimant's attorney, but the attorney was not in and a message was left. The call was returned on December 12. At that time the parties attempted to arrive at a fee for the mother's services. After contacting a nurse's aide registry, the claims representative called claimant's attorney that same day with what the carrier believed to be a reasonable figure for the services, but again claimant's attorney was not in, and again a message was left. Claimant's attorney returned the call on December 21, and the parties agreed upon a fee of $25.00 per day for the mother's services. The agreed reimbursement *1133 was paid in lump sum thirteen days later on January 3, 1980. Upon these facts, the deputy determined that the time taken by the carrier to pay for the nursing services was unreasonably long (thirty-five days from the filing of the claim), and entitled claimant's attorney to a fee.
The carrier's liability for nursing services in this case did not begin until it received notice of a request for these services, since there were no compelling circumstances to impute knowledge to the carrier of the claimant's need for such services. Silver Springs Sportswear v. Marlin, 389 So.2d 702 (Fla. 1st DCA 1980). The claim for nursing services was filed on November 20 and was followed by a letter from claimant's lawyer on November 30. Thus, the operative point in time, for purposes of determining whether the carrier made a diligent effort to investigate this claim, is the latter part of November when the claim was filed and the carrier received the letter from claimant's lawyer containing Dr. Millheiser's recommendation. It is noteworthy that this letter contained no information concerning the hours, rates, or duration of the services for which payment was being sought. To that end, the carrier within a reasonable period of time contacted claimant's attorney in an attempt to resolve the claim. There was a period of communications between the parties and then the claim was paid in full on January 3, 1980. While we agree that excessive and unreasonable delays by the carrier in communicating with claimant's counsel may conceivably amount to bad faith, the circumstances here do not approach those limits.
Nor do the circumstances approach such limits when we examine the carrier's alleged unreasonable delay in authorizing a pain clinic.[1] On April 8, 1981, the carrier's claims representative called Dr. Millheiser about another matter and was advised by the doctor's secretary that treatment at a pain clinic was being recommended. The carrier was concerned about this recommendation since it was at odds with an earlier report of Dr. Millheiser which suggested an imminent return to work release for this claimant. On April 10, there was a conversation between the claims representative and claimant's attorney at which time there was some discussion about getting a second medical opinion. On April 13, a claim for treatment at the pain clinic was filed. On April 16, the claim's supervisor spoke to Dr. Millheiser personally and learned that Dr. Millheiser had made this recommendation because he could find no organic basis for claimant's continuing complaints. On May 1, 1981, the carrier authorized treatment at the pain clinic. Under the circumstances, it is our view the carrier conducted a reasonable investigation, and the delay of eighteen days in granting authorization, although excessive, cannot alone be said necessarily to constitute bad faith.
Finally, we turn to the fourth item for which a fee was awarded.[2] The carrier initially established a compensation rate of $185.90, based upon the employer's first report of injury. Late in October, the carrier received the formal wage statement which suggested a lower compensation rate of $183.24. In the meantime, the claims representative visited claimant's place of employment and examined the payroll records. These too indicated that the reduced compensation rate was correct. Consequently, on November 6, 1979, the carrier lowered the compensation rate to $183.24, a difference of $2.66. In reality, the wage statement upon which the carrier relied was in error. It erroneously indicated that claimant worked and was paid for seven days, instead of ten days, during a two week period, when in actuality claimant had taken three days of personal leave for which she was later paid. Ignorant of this, the carrier initially took no action to readjust the compensation rate, relying instead on *1134 its earlier investigation. However, the claims representative did subsequently call the employer's comptroller, learned of its error, and promptly returned the compensation rate to the original figure of $185.90 on January 3, 1980. Because the carrier did not call the comptroller to verify the downward adjustment until January 2, 1980, the deputy found that the adjustment was not investigated or decided with any reasonable care by the carrier, and concluded that the carrier's conduct amounted to oppression as well as wanton and reckless disregard for the rights of the claimant constituting bad faith. He therefore awarded claimant's counsel a fee on those benefits. Again we find the circumstances do not justify a finding of bad faith.
Here, the carrier acted with reason in fixing the original compensation rate, and in lowering it upon the receipt of other information. It made an investigation by actually visiting the claimant's place of employment. The information received seemed to verify the lower rate, but in fact it apparently was misinterpreted. These actions do not represent oppressive conduct or wanton or reckless disregard for the claimant's rights. There is no hint of intentional delay or disregard for the claimant's rights, and certainly no "passive disapproval and rejection ... on mere technical matters of form," Florida Erection Services, supra, 395 So.2d at 211.
We recognize that in Florida Erection Services we vested a broad discretion in the deputy commissioner, when making a determination of bad faith, to measure actions of the carrier in light of his judgment, experience and knowledge. Ordinarily, his determination with respect to bad faith will not be disturbed absent a clear abuse of discretion or departure from the essential requirements of law. Acevedo v. Ampco Products Company, 407 So.2d 376 (Fla. 1st DCA 1981). Our reversal in this case does not represent a retreat in any respect from the principles formulated in prior decisions. We caution also that our somewhat detailed recitation of the facts, particularly of dates and times, is not intended to convey either approval or disapproval of any specific time-frame for actions by the employer/carrier not regulated by statute or rule. As this and other cases on the subject illustrate, bad faith (or the absence of it) for attorney's fees purposes, cannot be reduced to a matter of counting days.
The order appealed is REVERSED.
MILLS and SHAW, JJ., concur.
NOTES
[1] We note here, as indicated earlier in this opinion, that the claimant does not contend, on appeal, that the delay in payment of nursing care services and authorization of the pain clinic constituted bad faith.
[2] In this instance, the deputy expressly found the carrier's conduct amounted to bad faith.