423 So.2d 1039 (1982)
ARDMORE FARMS and ESIS, C/O INA, Appellants,
v.
Joan A. SMITH, Appellee.
No. AJ-209.
District Court of Appeal of Florida, First District.
August 19, 1982.
On Rehearing December 29, 1982.
Donna L. Bergh of Walker, Buckmaster, Miller & Ketcham, Orlando, for appellants.
Edward H. Hurt of Hurt & Parrish, and Bill McCabe of Shepherd, McCabe & Cooley, Orlando, for appellee.
On Rehearing En Banc December 29, 1982.
THOMPSON, Judge.
The employer/carrier (E/C) bring this appeal from a compensation order awarding: (1) wage loss benefits for the months of August and September 1981; (2) permanent total disability (PTD) benefits commencing October 1, 1981, and; (3) costs of the proceedings. In the fourth and last paragraph of the decretal portion of the order, the deputy commissioner (deputy) reserved jurisdiction *1040 of the cause for the purpose of determining entitlement to attorney's fees. With the exception of the award of wage loss benefits, we reverse these awards and strike that portion of the order reserving jurisdiction on the question of attorney's fees.
On May 18, 1980 claimant, while employed as a truck driver, was exposed to dust thrown into the air by the eruption of the volcano Mount Saint Helens. This exposure resulted in serious and permanent injury to the claimant's lungs. On September 1, 1981, the E/C stipulated and agreed to commence payment of wage loss benefits upon the submission of appropriate wage loss benefit request forms. The E/C paid wage loss benefits for the months of May, June, and July, 1981, but it thereafter refused to pay wage loss benefits for the months of August and September on grounds that the wage loss benefit request forms it received for those months were not properly filled out and executed. The benefit request forms at issue were not signed by either the claimant or her attorney, although they did bear the impression of the attorney's signature stamp. These forms were marked to indicate that claimant was not receiving social security benefits.
Upon the E/C's failure to pay wage loss benefits pursuant to these forms, the claimant applied for a hearing on the matter, which hearing was thereafter scheduled for December 11, 1981. The only issue which was in controversy when the hearing commenced on December 11, 1981 was the claimant's entitlement to wage loss benefits for the months of August and September 1981, plus costs, interest, penalties, and attorney's fees. During the hearing, the claimant submitted revised wage loss benefit request forms for the months of August and September, which were properly signed and which indicated that claimant was receiving certain social security benefits. The deputy thereafter issued the order described hereinabove, without including in her order any reference to the fact that claimant had submitted revised benefit request forms, and without making any finding as to whether the E/C were justified in refusing to honor the unsigned forms.
We agree with the deputy that the E/C are obligated to pay the claimed wage loss benefits for the months of August and September 1981. However, we hold that the benefit request forms originally submitted were not properly executed, and therefore the E/C's obligation to pay the wage loss benefits did not mature until the date of the hearing when the claimant submitted accurate and duly executed forms. This court has held that the self-executing nature of the workers' compensation law requires that mere failure to comply with technical requirements in filing wage loss benefit request forms should not defeat a valid claim for such benefits, Car Stop Unlimited v. Salmon, 404 So.2d 172 (Fla. 1st DCA 1981), and that there is "nothing sacrosanct" about the particular form by which wage loss benefits are requested, Florida Erection Services, Inc. v. McDonald, 395 So.2d 203 (Fla. 1st DCA 1981). However, the claimant's failure to report receipt of social security benefits and her failure to sign a benefit request form, thereby attesting to its accuracy, were not "merely technical" omissions. Without accurate information as to what social security or unemployment compensation benefits claimant is receiving, the E/C cannot determine what wage loss benefits are due the claimant, and without claimant's signature on the request form the E/C are unable to obtain the release of information from the Division of Employment Security. By failing and refusing to submit properly executed forms, the claimant herein deprived the E/C of an opportunity to calculate and ascertain the amount of the benefits due claimant, and to make timely payment thereof.
It is undisputed that the E/C accepted claimant as being PTD and commenced payment of PTD benefits prior to the hearing. There is no contention that the payment of PTD benefits was untimely. Therefore, there was no controversy with respect to the permanent and total nature of claimant's disability, and the deputy erred in adjudicating the issue. Sperry *1041 Remington Office Machines v. Stelling, 383 So.2d 1150 (Fla. 1st DCA 1980). Although similar error was held harmless by another panel of this court, see G & S Packing Company v. Driggers, 382 So.2d 446 (Fla. 1st DCA 1980), we think it better to reverse such an award in order to avoid possible future confusion and unnecessary litigation concerning the appropriate basis for an award of attorney's fees. Accordingly, that portion of the deputy's order awarding PTD benefits is stricken.
In view of our reversal of the award of PTD benefits, and of our holding that wage loss benefits for the months of August and September 1981 did not become due and payable until the date of the hearing when claimant submitted properly executed wage loss benefit request forms, we must conclude that the claimant did not "prevail" in the proceedings before the deputy, and that the award of costs of the proceedings was also erroneous. Additionally, the deputy did not, and from this record could not, find that the carrier acted in bad faith in handling this claim. Therefore, the award of costs is reversed, and the portion of the order reserving jurisdiction to determine the issue of attorney's fees is stricken. Claimant's petition for appellate attorney's fees is denied.
REVERSED.
MILLS and BOOTH, JJ., concur.

ON REHEARING EN BANC
PER CURIAM.
After reconsideration by the court on its own motion, en banc, the court by majority vote of the judges recedes from that portion of the original panel's decision and opinion holding that because claimant's wage loss forms were "not properly executed," the E/C's obligation to pay wage loss benefits did not mature upon receipt by the E/C, and that under the facts presented, the deputy commissioner's reservation of jurisdiction to determine "bad faith" was error.
The majority of the judges of the court find that the original panel's decision concerning the effect, as a matter of law, of defectively executed wage loss claim forms conflicts with the decision and opinion of this court in Florida Erection Services, Inc. v. McDonald, 395 So.2d 203 (Fla. 1st DCA 1981).
The facts are essentially as stated in the panel's original opinion, with certain variations and omissions which will be mentioned. On May 18, 1980, the claimant, while employed as a truck driver, was exposed to dust thrown into the air by the eruption of the volcano Mt. St. Helens, resulting in serious and permanent injury to claimant's lungs. On September 1, 1981, the E/C stipulated and agreed to commence payment of wage loss benefits, upon the submission of appropriate wage loss request forms, and this stipulation was communicated to the deputy commissioner by joint letter executed by counsel for the E/C and counsel for the claimant. On the strength of this stipulation, the claimant's attorney canceled a scheduled hearing on wage loss and other claims. As stipulated, the E/C paid wage loss benefits for the months of May, June and July, 1981, but refused to pay wage loss benefits for the months of August and September, although wage loss request forms for these months were timely submitted. The E/C filed no notice to controvert (Section 440.20(6), (7), Florida Statutes (1979)), and filed no motion to dismiss the claim for either month (Section 440.19(2)(b)). In short, so far as the record discloses, the E/C gave no reason for its denial and nonpayment of the August and September wage loss claims, and the record further discloses no "active effort and initiative" on the part of the carrier to determine its obligation to pay wage loss benefits to the claimant. Florida Erection Services, 395 So.2d at 211. The first and only indication given by the E/C of their reason for nonpayment is found in the prehearing stipulation in which the E/C asserted that the forms were "not signed," and "no work search shown."[1] So far as appears from the *1042 record, the errors in reporting receipt of social security benefits, which are emphasized in the original panel's opinion, were raised by the E/C for the first time on appeal, thus presenting conflict with Sunland Hospital  State of Florida v. Garrett, 415 So.2d 783 (Fla. 1st DCA 1982).
A hearing on the E/C's failure to pay the August and September wage loss claims was scheduled and held on December 11, 1981. The E/C had been paying temporary total disability to the claimant prior to the submission of wage loss claims, and prior to the hearing stipulated that the claimant was permanently and totally disabled as of October 1, 1981. At the hearing the claimant submitted revised wage loss benefit request forms for the months of August and September, which were signed by her, and which indicated that she was receiving certain social security benefits. Based upon the stipulations of the parties, and the wage loss claim forms filed at the hearing, the deputy commissioner ordered payment of wage loss benefits for the months of August and September, and permanent total disability benefits commencing October 1, 1981. The deputy commissioner also ordered the E/C to pay costs of the proceedings, and reserved jurisdiction to determine the issue of attorney's fees. The deputy commissioner made no reference in her order to the alleged defects in the original wage loss forms, and made no finding concerning whether the E/C justifiably refused to honor the forms originally submitted.
As pointed out by the original panel's opinion, the original August and September wage loss forms were not signed personally by the claimant or her attorney, but they did bear the impression of the attorney's signature stamp. The attorney was the same one with whom the E/C had previously dealt in stipulating for payment of wage loss claims, and in stipulating to the cancellation of a wage loss hearing before the deputy commissioner. The wage loss claim form for August contained a check-mark beside the word "No" in answer to the question: "Are you receiving any social security?" The September form indicated neither "Yes" nor "No" to this question. The wage loss forms submitted at the hearing before the deputy commissioner answered the social security question in the affirmative and gave the amount $362.90. The deputy commissioner's order finds that claimant had an average weekly wage of $450.00 per week. Nothing in the order nor in the record or briefs before us indicates that the amount of social security would entitle the E/C to any set-off or adjustment on account of the social security benefits received by the claimant, nor that the E/C has been prejudiced in any manner because of the mis-information conveyed by the original claim forms filed by the claimant's attorney.
The original panel's decision held that because of the errors in failing to report social security benefits, and because the forms were "not signed" by either the claimant or her attorney, the forms were "not properly executed, and therefore the E/C's obligation to pay the wage loss benefits did not mature until the date of the hearing when the claimant submitted accurate and duly executed forms." In so holding, the panel acknowledged prior decisions holding that the mere failure to comply with technical requirements in filing wage loss benefit request forms should not defeat a valid claim for such benefits, citing Car Stop Unlimited v. Salmon, 404 So.2d 172 (Fla. 1st DCA 1981), and Florida Erection Services Inc. v. McDonald, 395 So.2d 203 (Fla. 1st DCA 1981). The court concluded, however, that the failure to report social security benefits and the claimant's failure to sign her request forms "were not `merely technical' omissions." In so holding the prior opinion collides with the principle enunciated in Florida Erection Services that the new workers' compensation law "will not tolerate passive disapproval and rejection of claims on mere technical matters of form." 395 So.2d at 211. Cf., Layne Atlantic Co. v. Scott, 415 So.2d 837 (Fla. 1st DCA 1982); Exceptional Children's Home v. Fortuna, 414 So.2d 1130 (Fla. 1st DCA 1982); Rinker *1043 Materials Corporation v. Harris, 413 So.2d 105 (Fla. 1st DCA 1982); Sam Rogers Enterprises v. Williams, 401 So.2d 1388 (Fla. 1st DCA 1981).
Even assuming for purposes of discussion, that certain errors or irregularities in the form of filing of wage loss claim forms might be considered "mere technical" defects or omissions, and others might be so serious as to completely invalidate the claim, the errors dealt with here, when compared with the error or omission in Florida Erection Services, must fall into the "mere technical" category.[2] The omission in Florida Erection Services was the failure to complete that portion of the form requiring disclosure of claimant's earnings during the month for which wage loss benefits were claimed. There could hardly be a more fundamental omission, since it is impossible to determine the amount of wage loss benefits due unless and until the E/C is informed of the amount of wages, if any, actually earned by the claimant. By contrast, the claimant's failure to sign the wage loss claim forms in the present case (although they were submitted and properly identified as emanating from the claimant's counsel, who was known to the E/C), could have had no bearing upon the E/C's duty to determine their obligation to pay wage loss benefits, particularly in view of the fact that the E/C had already stipulated to payment of wage loss benefits for those months.[3] Furthermore, although the failure to provide the correct information regarding receipt of social security benefits could have some significance to the E/C, there is no indication in this record that the E/C failed to pay because of this omission, and indeed, for all the record shows, the fact that an error in this regard had occurred was not apparent until the December hearing before the deputy commissioner.[4] If the E/C had this information at the time the wage loss forms were received, it could have adjusted the wage loss payments accordingly, if any adjustment was proper. If it did not have this information, then there was no way for the E/C to know that the August or September forms provided incorrect information, in which event, the carrier could not have used this as an excuse *1044 for nonpayment. The correct procedure, one which is clearly mandated by Florida Erection Services and its progeny, is for the E/C to proceed with "active effort and initiative" in order to "fairly and expeditiously determine its obligation to place needed benefits in the hands of the injured worker... ." 395 So.2d at 211.
It is clear that the establishment of an hierarchical approach to errors, defects and omissions in claim forms, pursuant to which some are "merely technical" and others as a matter of law have a nullifying effect, would substantially depart from Florida Erection Services. Under that decision, the obligation of the E/C promptly to pay benefits upon receipt of a claim regular on its face, or to actively seek any information needed to cure an irregularity, is not dependent upon the claimant's compliance with technical requirements. A claim for wage loss benefits is adequate, under Section 440.20(4), if it is sufficient "to give `knowledge' of his claim, which is all that is required." Florida Erection Services, 395 So.2d at 212. Social security and unemployment compensation information is not required to be included in order for a claim to be "in compliance" with the law governing the contents of claims. Section 440.19(2)(d); and see footnote 3. Even if such information were required by statute, the receipt of an incomplete claim form would be the occasion for action by the E/C, not an excuse for merely ignoring the claim.
It cannot be said as a matter of law that the E/C here could not be guilty of "bad faith" in failing to either pay or make a prompt investigation or determination of its obligation to pay the August and September wage loss claim forms when filed. This would deprive the claimant of the opportunity of seeking recovery of substantial benefits afforded her by the act, in the form of attorney's fees, and would divest the deputy commissioner of the "broad discretion" which is the sine qua non of this aspect of workers' compensation litigation. See, Florida Erection Services, at 213. Whether, and to what extent, the defects and irregularities in the claim forms submitted by the attorney hampered or impeded the E/C in the processing of the claims, and how the E/C's "bad faith" liability may be affected thereby, are matters to be dealt with initially by the deputy commissioner at a hearing, based upon the evidence and arguments duly presented. We simply hold that the defects and irregularities shown thus far cannot be held as a matter of law to preclude claimant's recovery of attorney's fees to which she may be entitled under the statute. Section 440.34(3)(b), Florida Statutes (1981).
The original panel decision reversing the award of permanent total benefits, on the ground that these benefits had been accepted, were being paid, and were therefore not in controversy, is adhered to. Those portions of the prior opinion reversing the award of costs, and reversing and striking the deputy commissioner's reservation of jurisdiction to consider attorney's fees, are receded from and modified as stated in this opinion.
ROBERT P. SMITH, Jr., C.J., McCORD, ERVIN, LARRY G. SMITH, SHIVERS, SHAW, WENTWORTH, JOANOS and WIGGINTON, JJ., concur.
THOMPSON, J., dissents with opinion in which MILLS and BOOTH, JJ., concur.
THOMPSON, Judge, dissenting.
I dissent and would adhere to the decision of the original panel. The majority finds that the original panel decision conflicts with the decision and opinion of this court in Florida Erection Services, Inc. v. McDonald, 395 So.2d 203 (Fla. 1st DCA 1981), and that the defects in the wage loss claim form filed in this case were "mere technical" irregularities of the type this court was referring to in Florida Erection Services. The majority also cites four other cases, all of which cite Florida Erection Services, but none of which involves the adequacy of a wage loss claim form. Two deal primarily with the bad faith issue that was involved in Florida Erection Services. See Layne Atlantic Co. v. Scott, 415 So.2d 837 (Fla. 1st DCA 1982); Rinker Materials Corp. v. Harris, *1045 413 So.2d 105 (Fla. 1st DCA 1982). The other two cite Florida Erection Services as authority for the general proposition that employees are entitled to receive benefits with reasonable promptness. See Exceptional Children's Home v. Fortuna, 414 So.2d 1130 (Fla. 1st DCA 1982); Sam Rogers Enterprises v. Williams, 401 So.2d 1388 (Fla. 1st DCA 1981).
There is a clear distinction between the irregularities involved in the claim filed in Florida Erection Services, and in the claim filed in this case. In Florida Erection Services, the claimant failed to send the carrier all four copies of the claim form and failed to fill in the wages earned during the period covered by the form. There is no statute or rule directing that a wage loss claim be filed in quadruplicate. Even if there was such a rule, the original or one copy of the claim form gives the carrier the same notice of the claim as an original and three copies. It is obvious that such an irregularity is a mere technical matter of form which should not and cannot be used to delay or deny payment of benefits. Although the irregularity of failing to specify the amount of wages earned, if any, is a greater hindrance to the carrier in promptly processing the claim than is the failure to file the claim in quadruplicate, this unnecessary hindrance should not prevent the carrier from processing the claim with reasonable promptness since this information concerning wages is available from the claimant or can be obtained by the carrier upon investigation without the consent of the claimant. However, information as to the social security or unemployment compensation benefits received by the claimant can only be obtained by the carrier from the claimant or with the written consent of the claimant. Any information given by the claimant as to the social security or unemployment compensation benefits received cannot be verified by the carrier without the claimant's written consent.
Florida Erection Services did not involve the misrepresentation that the claimant was receiving no wages when, in fact, he was receiving wages. In this case, the claim form filed for wage loss benefits for the month of August contains a misrepresentation that the claimant was not receiving any social security benefits when, in fact, the claimant was receiving such benefits. The wage loss claim form contains the following notice "[a]ny person who, knowingly and with intent to injure, defraud or deceive any employer or employee, insurance company, or self-insured program, files a statement of claim containing any false or misleading information is guilty of a felony in the third degree." False information that the claimant was not receiving social security when, in fact, she was receiving social security injures or defrauds an insurance company which is entitled to an off-set of the social security benefits. It is difficult to conceive how an act which constitutes a third degree felony punishable by not exceeding five years in the state penitentiary can be considered "a mere technical matter of form." The August and September wage loss claim forms were not signed by the employee as directed in the form but were executed with the rubber stamp facsimile signature of her attorney. The original panel did not, as was assumed by the majority, determine that the use of a facsimile signature by an attorney may not be considered as a signing by the attorney. Rather, the original panel's concern was that the claim form had not been signed by the claimant. The majority has cited no authority for the proposition that an attorney may attest to the accuracy of information provided on a wage loss claim form, or authorize the Division of Employment Security to release unemployment compensation information, either by signature or by facsimile signature. To be sure, an attorney may sign pleadings and other documents on behalf of a client, but an attorney is not empowered to authorize release of confidential information about a client or to sign affidavits for a client. A properly executed wage loss benefit request form includes representations of fact as to wages earned and social security and unemployment compensation benefits received, and constitutes authorization for the release of confidential information concerning unemployment *1046 compensation benefits received. The form is clearly more in the nature of an affidavit or a release than a pleading, and thus should be signed by the claimant personally. The form directs that the employee complete and sign that section and there is no authority in the law or on the form for execution of the form by the claimant's attorney.
It is contended that § 440.19(2)(d), Fla. Stat., which specifies the information to be contained in claims, does not require the inclusion of social security or unemployment compensation information. While that statement is true, that section does not apply to wage loss claim form BCL-13b. Section 440.19(2)(d) applies to original claims for benefits which are filed with the Division of Workers' Compensation (Division) and which, if contested, are thereafter referred to a deputy for hearing. The information which the statute requires to be included with the original claim permits the Division to identify the claim and the claimant, and to make the evaluation of the claim required under § 440.19(1). Wage loss benefit request forms serve the entirely different purpose of apprising the carrier of the amount of wage loss benefits due on a monthly basis. This is made absolutely clear by Fla. Admin. Code Rule 38F-3.18(3) which provides in part:
(3) LES Form BCL-13b as Claim for Benefits. The original filing of LES Form BCL-13b with the employer or carrier does not constitute the filing of a formal claim for benefits or claim for compensation as contemplated in subsection 440.19 or 440.25, Florida Statutes. The original filing of LES Form BCL-13b with the carrier (by the employee) is solely to provide the employee an administrative method to comply with the requirement of subsection 440.185(10) that the employee report to the carrier or self-insured employer any compensable wage loss. .. .
The wage loss forms call for the inclusion of information which is not required by the statute relating to original claims and they do not require the inclusion of certain information required by the statute to be in original claims. LES Form BCL-13b, Request for Wage Loss Benefits, is an official form adopted by Fla. Admin. Code Rule 38F-3.25 and is authorized by law and rule adopted pursuant to law. The Division has the same authority to request social security information and a release of unemployment compensation information in that form as it did to adopt and authorize the use of LES Form BCL-14, Request for Social Security Disability Benefit Information, or LES Form BCL-20, Authorization and Request for Unemployment Compensation Information.
The majority opinion eliminates the requirement that the claimant sign the wage loss claim form and correctly fill in the amount of social security benefits received, and finds that the proper way for the carrier to obtain that information is to request that the claimant furnish the carrier with LES Form BCL-14 authorizing the release of social security information or LES Form BCL-20 authorizing the release of unemployment compensation information. This procedure would delay the processing of the claim instead of accomplishing the purpose stressed in Florida Erection Services of assuring the prompt payment of benefits. If the only procedure for obtaining social security information is to file a request, pursuant to Fla. Admin. Code Rule 38F-3.20, that the employee furnish a LES Form BCL-14 and the proper way to obtain information regarding unemployment compensation benefits paid is to request, pursuant to Fla. Admin. Code Rule 38F-3.22, that the employee furnish a LES Form BCL-20 then the carrier would be entitled to receive those forms before processing the claim. However, if the information or the authority to release the information is on the wage loss claim form when filed, there is no reason for any delay in processing it. Fla. Admin. Code Rules 38F-3.20 and 38F-3.22 both provide that if the injured employee willfully fails or refuses to furnish the form requested within 21 days from the date of demand, payment of workers' compensation benefits for disability or supplemental compensation prescribed by § 440.15(1)(e), Fla. Stat. shall cease until such time as the employee furnishes the signed LES Form BCL-14 or LES Form BCL-20. Moreover, Fla. Admin. Code Rule 38F-3.22 relating to requests for unemployment compensation information provides that payment of benefits under the act for total disability or supplemental compensation pursuant to § 440.15(1)(e), Fla. *1047 Stat., shall cease until the employee furnishes LES Form BCL-20 to the party requesting the form. This indicates that at least that rule, if not both rules, is applicable to requests for social security information and unemployment compensation information only where the claimant has sustained a total disability as set forth in § 440.15(1) and not to claims for wage loss benefits under § 440.15(3). Even if applicable, the method advocated by the majority would delay instead of expedite the processing of a wage loss claim.
In holding that the claimant need not sign wage loss benefit claim forms the majority has eliminated the requirement that someone who has both knowledge of the information requested and the right to authorize the release of pertinent information sign the claim. If a person without actual knowledge can sign the claim and intentionally provide incorrect information, then the penalty provisions for furnishing false and misleading information can be totally avoided by the mere expedient of having someone other than claimant execute the claim form.
If it is permissible for an attorney to sign the form in lieu of the claimant, then the attorney should have the same responsibility for the accuracy of the information that the claimant has and should be subject to the same penalties for false or misleading information as is the claimant. If a claim for wage loss benefits can be filed by an attorney, there is absolutely no excuse for it being incorrect or incomplete.
It is also contended that the errors in reporting receipt of social security benefits which are emphasized in the original panel's opinion were raised by the E/C for the first time on appeal thus presenting conflict with Sunland Hospital/State of Florida v. Garrett, 415 So.2d 783 (Fla. 1st DCA 1982). In the prehearing stipulation, the E/C asserted as a defense that the forms were not signed. Although the deputy never ruled on this defense, the defense that the wage loss claim forms were not signed and all issues reasonably encompassed within that defense, including unverified false information not attested to by the claimant, were raised before the deputy and thus preserved for appellate review.
I would adhere to the original panel decision.
MILLS and BOOTH, JJ., concur.
NOTES
[1] The deputy commissioner's order alludes to the work search defense but contains no ruling with respect to that issue. Since this possible defense was not pursued on appeal, we assume that it has been abandoned by the E/C.
[2] Although the original panel's decision assumes that the use of a facsimile signature by the attorney may not be considered a "signing" by the attorney, no authority for this position is mentioned. Florida law is to the contrary. A facsimile signature can be sufficient, even on a document as important as an arrest warrant. See, State v. Hickman, 189 So.2d 254 (Fla.App. 1966). See, further, Uniform Commercial Code, § 671.201(39), Florida Statutes, defining "signed" for Code purposes, as "includes any symbol executed or adopted by a party with present intention to authenticate a writing."
[3] The E/C's argument that the claim form must be signed by the claimant in order to allow the E/C to obtain social security and unemployment compensation information is not well taken. If the E/C need this information, they have only to request it, either informally, by telephone or letter request, or by using more formal methods. The Division's Rules 38F-3.20 and 38F-3.22 provide for social security and unemployment compensation information requests, and these rules also provide for specific forms for this purpose (Forms BCL-14, BCL-20). Section 440.19(2)(d), which specifies the information required to be included in claims, does not require the inclusion of social security or unemployment compensation information. The same subsection further prescribes a procedure for contesting claims which are "not in compliance" with the statute. The remedy for non-compliance is a motion to dismiss the claim. Neither the statute nor case law can support the E/C's action here of simply ignoring the claim. Car Stop Unlimited v. Salmon, 404 So.2d 172, cited in the original panel's decision, forecloses the argument that because the wage loss claim form (BCL-13(b)) contains the question relating to receipt of social security, the failure to answer or an erroneous answer invalidates the claim. "... [W]e conclude that failure by claimant to utilize the specific form prescribed by the Division should not be fatal so long as essential statutory requirements respecting claimed wage loss benefits are otherwise satisfied." Id. at 173. Car Stop held that an application for hearing, under the circumstances presented, was properly treated as a claim.
[4] Wage loss claims are payable 14 days from the date the E/C have "knowledge" of the compensable wage loss. Section 440.20(4), Florida Statutes. The wage loss claims for August and September were dated September 9 and October 6, respectively. The date received by the carrier is not apparent, but the record does disclose the claimant's new application for wage loss hearing dated September 24, 1981.