PER CURIAM.
The order entered by deputy commissioner Michael J. DeMarko in this case is as follows:
The question involved in the claim is whether the employer/carrier can cut off benefits with a claimant who fails to provide evidence of a good faith work search along with his monthly wage-loss request. It is contended that the burden of proof is on the claimant to show a change of employment status due to his injury and further he must demonstrate through a good faith work search, he is unable to secure employment commensurate with his abilities.
The Claimant contends that the Order of July 15, 1981, finding that he was only capable of light work paying minimum wage [and on that account granting maximum available wage loss benefits by an order affirmed, without opinion, in Clemmons v. C.A. Carroll, Inc., 415 So.2d 1363 (Fla. 1st DCA 1982) ], relieves him of the practical necessity of conducting a work search. Because the Claimant’s average weekly wage as a pipefitter was high, even if he did find light work paying minimum wage he still would be entitled to wage-loss benefits at the maximum rate. It is further argued that the statute does not require a work search list to accompany a request for wage-loss. Without such statutory authority, the Employer/Carrier cannot require its submission.
This claim brings into focus two conflicting concepts under the Act. The law is supposed to be self-executing. In that context, the Employer/Carrier has a duty to investigate claims and gather facts sufficient to either pay or decline to pay a requested benefit. It is abundantly clear that a claimant must conduct a good faith work search before he or she is entitled to compensation. Even if it is shown by a later work search that the claimant is entitled to wage-loss benefits, the deputy commissioner cannot retroactively award benefits for those months in which no work search was made. Quality Petroleum Corp. v. Mihm, 424 So.2d 112 (Fla. 1st DCA 1982).
We also know that a claim cannot be denied because of the Claimant’s technical failure to properly fill out and execute a wage-loss request form. Ardmore Farms v. Smith, 423 So.2d 1039 (Fla. 1st DCA 1982).
The need for such information is dramatically shown in this case. As a matter of fact, the Claimant did not look-for work in the months of October and November of 1982. His efforts at re-employment were minimal in December. Since the Claimant was represented by counsel, the Employer/Carrier was obligated to make any inquiries about work *997 search through Claimant’s counsel and not directly to the Claimant. As it turns out, the Employer/Carrier had a right to suspend benefits for those months.
There is no merit to the Claimant’s argument that even if he did find a job he would probably earn minimum wages, which in turn would entitle him to compensation at the maximum compensation rate. The basic thrust of the wage-loss concept is to provide compensation for injuries during a time in which the Claimant is either forced out of the labor market or undergoing rehabilitation. The idea that the Claimant should be paid compensation according to a schedule for the effects of his injury was formally rejected by the legislature in 1979. Through case law, the courts have decided that the claimant must test the labor market in order to prove entitlement. The thrust of these combined requirements is to get the claimant back into the labor market as soon as possible. Under wage-loss, even if he finds work paying far less than his pre-injury wage, he will not be penalized. His compensation goes on. The idea that a return to work would be of little practical value does not coincide with the realities of life. For the unskilled and poorly educated worker, the best path to success in the market place is to build a career through promotion or a succession of better paying jobs. The apprentice plumber usually is promoted based on job skills developed while working. He does not start making top wages. In this case, it has been determined that the Claimant is not a good candidate for rehabilitative training. His only option is to re-enter the labor market and again work his way up the ladder of success. Whether he is capable of doing this is not known but the effort must be made. He must start somewhere. In this case, the Employer/Carrier had a right to suspend benefits until such time as the Claimant resumed his efforts at re-employment. In other words, the Employer/Carrier did not resist an otherwise valid claim. Their resistance to the claim was well taken.
The decision in Ardmore Farms, supra, indicates that if a carrier withholds benefits because of some defect in the request for wage-loss benefits form, it is most likely at the carrier’s peril. If a request is received and it is regular on its face, the employer/carrier is obligated to proceed with “active effort and initiative” in order to fairly and expeditiously determine its obligation and place needed benefits in the hands of the injured worker. Florida Erection Services v. McDonald, 395 So.2d 203, 211 (Fla. 1st DCA, 1981). The purpose of the request or claim is to give the employer/carrier “knowledge” of the claim which is all that is required, Id. at 212. There is nothing in the statute nor anything in the form promulgated by the division to require that a work search list must be attached to each request.
Since the work search is a prerequisite to a claim for wage-loss, the employer/carrier does have the right to inquire of the claimant regarding his efforts. When the claimant is represented by counsel, such inquiries can be promptly directed to counsel. Any delay in the claimant’s response should not be held against the employer/carrier.
As a practical matter it would be wise for the careful claimant’s attorney to anticipate the employer/carrier’s need for work search information and supply it along with the request form. This would prevent unnecessary delays in cases where benefits are clearly due and in cases where the employer/carrier intends to controvert the request, the Claimant can take immediate steps to bring the matter before the deputy commissioner for determination. However, the law as interpreted by the First District Court of Appeal in Ardmore Farms probably does not require such a form to be filed. Therefore, if the work search information is not attached to the request for wage-loss benefits and the claimant has in fact conducted a good faith work search, the employer/carrier cannot escape liability for payment of such benefits based merely on the fact that such information was *998 not included in the request. However, if it turns out that the claimant has not conducted a good faith work search, as in the case at bar, then no liability exists for the payment of the request.
WHEREFORE, having heard the testimony, considered the evidence, observed the candor and demeanor of the witnesses, heard the argument of counsel, and resolved all conflicts, the claim for wage-loss benefits for the months of October, November, and December of 1982 are denied because the Claimant failed to conduct a good faith work search.
Commissioner DeMarko’s order is exceptionally persuasive and it is approved. We do not reach the question of whether a carrier may reasonably require that work search information be “attached to the request for wage-loss benefits,” for that question was not briefed and is not necessarily decided in passing on this appeal.
AFFIRMED.
ROBERT P. SMITH, Jr., BOOTH and WIGGINTON, JJ., concur.