440 So.2d 29 (1983)
BURNUP & SIMS, INC. and Crawford & Company, Appellants,
v.
Homer L. OZMENT, Appellee.
No. AO-259.
District Court of Appeal of Florida, First District.
November 3, 1983.
Rehearing Denied December 1, 1983.
*31 Janet R. DeLaura of Smalbein, Eubank, Johnson, Rosier & Bussey, Rockledge, for appellants.
Edward J. Richardson of Saxon & Richardson, Melbourne, for appellee.
THOMPSON, Judge.
This is an appeal from a compensation order awarding attorney's fees pursuant to § 440.34(2)(b), Fla. Stat. (1979). We reverse.
The claimant sustained a serious compensable back injury on September 6, 1979, and reached maximum medical improvement (MMI) from his injuries on August 29, 1980. The claimant's doctor found he had suffered a 25% permanent impairment of the body as a whole. On September 17, 1980, the employer/carrier (E/C) received a copy of the doctor's report declaring claimant had reached MMI and discontinued payment of temporary total disability (TTD) benefits. On the same date the doctor's report was received, the E/C forwarded claimant a letter informing of his possible entitlement to wage loss benefits and enclosed a supply of wage loss benefit request forms. The claimant, who apparently was under the impression that the E/C were refusing to pay any further compensation benefits, hired the attorney who continues to represent him in this case. On September 23, 1980, this attorney wrote the E/C to inform them that claimant had been actively but unsuccessfully seeking employment, and was thus experiencing a total loss of wages. The attorney further informed the E/C that claimant was, in his opinion, permanently and totally disabled (PTD), and that the attorney would be filing "the appropriate claim forms" and would request a hearing on the matter. The attorney closed his letter with a request that the E/C offer a lump sum payment in settlement of the PTD claim. On October 1, 1980, the E/C responded to the attorney's letter, informing him that lump sum settlement was not appropriate under the 1979 amendments to the workers' compensation law, and that "[a]t this point, the carrier is not in agreement with you that your client is permanently and totally disabled."
On November 14, 1980, the E/C deposed the claimant and learned that he had been unable to find employment because of his inability to lift or to stand on his feet for prolonged periods. The E/C further learned that claimant was 45-years-old, that he had a high school diploma, and that he had taken some college business courses while in the service. On December 5, 1980, the claimant's attorney filed a formal claim for benefits, which included a claim for PTD benefits and wage loss benefits. However, the attorney did not submit any wage loss benefit request forms to the E/C until January 30, 1981. On February 6, 1981, the E/C submitted to the attorney a check for wage loss benefits for the period from September 19, 1980 through January 18, 1981, along with a letter reminding the attorney that wage loss benefit request forms should be filed with the E/C on a monthly basis and that the forms should include a statement as to what, if any, work search efforts the claimant had made during the previous month. The E/C thereafter continued to pay wage loss benefit upon receipt of wage loss benefit request forms, but continued to insist that the claimant seek employment as a prerequisite to payment of the benefits. During this period, the E/C also investigated the possibility that claimant might benefit from treatment at a pain clinic, and pursued the possibility of rehabilitation both with a state rehabilitation nurse and with a private rehabilitation and vocational counselor. On May 14, 1981, a Division of Workers' Compensation (Division) field specialist completed and forwarded to the parties his claim evaluation conducted pursuant to § 440.19(1), Fla. Stat. The field specialist recommended that the E/C continue payment of wage loss benefits, but that the E/C should provide the claimant with vocational counseling and, if indicated, vocational rehabilitation prior to accepting claimant as PTD. The PTD claim was heard on August 20, 1981, and on *32 October 5, 1981 the deputy commissioner (deputy) entered an order finding claimant to be PTD and reserving jurisdiction to determine whether an attorney's fee should be awarded.
Hearings on the attorney's fee issue were thereafter conducted, resulting in the issuance, on September 1, 1982, of the order on appeal. In the order, the deputy found that the claimant's failure to timely file wage loss benefit request forms did not justify the E/C's delay in paying the wage loss benefits. This finding was erroneous. Although this court has ruled on numerous occasions that wage loss requests need not be submitted on any particular form, and need not be technically perfect or complete down to the last detail, see, e.g., Ardmore Farms v. Smith, 423 So.2d 1039 (Fla. 1st DCA 1982), this court has never ruled that a claimant need not file a wage loss benefit request at all. Such would not be consistent with the dictates of § 440.185(10), Fla. Stat., and under the circumstances of this case no reason appears for excusing the delay in filing the wage loss request form.
In paragraphs nine and ten of the order, the deputy found that notwithstanding the existence of the PTD claim, the E/C continued to insist that claimant conduct a work search each month as a prerequisite to receipt of wage loss benefits, and that the E/C had continued to dispute the PTD claim to and through the date of the hearing. These findings cannot support the conclusion that the E/C acted in bad faith in the handling of this claim. Where a claimant is not patently totally disabled, the E/C is clearly entitled to require a work search as a condition of payment of wage loss benefits, and the fact that the E/C controvert a claim or assert defenses thereto cannot, without more, support a finding of bad faith. Pam Am Tobacco Corp. v. Brown, 416 So.2d 1211 (Fla. 1st DCA 1982); Harper Plumbing & Heating v. Boyd, 418 So.2d 396 (Fla. 1st DCA 1982). Section 440.34(2)(b), Fla. Stat. (1979) defines bad faith as "conduct by the carrier ... which amounts to fraud, malice, oppression, or willful, wanton or reckless disregard of the rights of the claimant." The statute does not provide for the payment of attorney's fees each time an E/C contest a claim but ultimately lose the case on its merits.
In Exceptional Children's Home & Nursery, Inc. v. Fortuna, 414 So.2d 1130, 1131 (Fla. 1st DCA 1982), this court held that an employee's right to receive benefits with reasonable promptness must be balanced against the E/C's right "to make a reasonable investigation regarding liability, and to have a reasonable opportunity to comply with the demands made, depending upon the exigencies of the particular request and the statutory duties and obligations pertinent to it." (emphasis added). Here, the "exigencies of the particular request" for PTD benefits were not compelling, since the claimant was eligible for, and was receiving, 100% wage loss benefits during the period when the E/C were investigating and resisting the PTD claim. Although a claimant who is PTD has a right to be accepted as being PTD even though he is receiving TTD or 100% wage loss benefits and thus is suffering no actual monetary loss as a result of the E/C's failure to accept him as PTD, the fact that the E/C continue to pay benefits during the pendency of the investigation certainly is relevant to the issue of whether the E/C acted reasonably in continuing to investigate a PTD claim.
The "statutory duties and obligations pertinent to" a PTD claim differ significantly from the obligations surrounding, for instance, a claim for medical benefits. Section 440.15(1)(b), Fla. Stat., provides that in all cases not involving certain catastrophic injuries the question of whether a claimant is PTD is to be determined in accordance with the facts of the case. Absent the enumerated types of catastrophic injury, "no compensation shall be payable [for PTD] if the employee is engaged in, or is physically capable of engaging in, gainful employment, and the burden shall be upon the employee to establish that he is not able uninterruptedly to do even light work due to physical limitation." § 440.15(1)(b), Fla. Stat. Deputies are prohibited by § 440.49(1)(c), *33 Fla. Stat. from adjudicating injured workers to be PTD prior to determining whether there is a reasonable probability that the employee can be rehabilitated to the extent that he or she can obtain suitable gainful employment. In our view, these statutes permit, if indeed they do not require, a more extensive investigation of a PTD claim than of lesser claims.
We note the deputy's omission from his order of any reference to the claim evaluation performed by the Division pursuant to § 440.19(1), Fla. Stat. Although the opinions rendered in such claim evaluations are advisory only and are neither res judicata nor binding in any way on any party, such evaluations should not be totally ignored unless they are patently wrong. We perceive that the legislature's determination that claim evaluations performed by the Division should be advisory only was based on a recognition that the information relied upon by the field specialist in making the evaluation will not ordinarily have been subjected to truth testing safeguards such as cross-examination. However, we are not willing to assume that the legislature intended the evaluations to have no effect whatsoever, since to do so would be to ascribe to the legislature an intention that the Division perform a useless act. At the very least, a claim evaluation such as that rendered by the Division in this case, i.e., one which specifically recommends that the E/C not accept a claimant as PTD until after vocational rehabilitation efforts have been undertaken, is relevant to the question of whether the E/C acted in bad faith when they declined to voluntarily accept claimant as PTD.
The reasonableness of the E/C's belief that claimant was not or might not be PTD was borne out by the July 22, 1981 deposition testimony of claimant's doctor, that claimant "could probably perform some type of sedentary job without too much of a problem... ." Because the record before us is entirely devoid of evidence tending to show that the E/C acted in bad faith, the award of attorney's fees is REVERSED.
WIGGINTON, J., concurs.
ERVIN, C.J., concurs and dissents with opinion.
ERVIN, Chief Judge, concurring and dissenting.
I concur with that portion of the majority's opinion reversing the deputy's bad faith determination on the ground that the carrier cannot be held responsible for failing to pay wage-loss benefits to the injured worker until a request from the employee for such benefits is made. I agree that once the carrier demonstrates it has complied with its statutory duty, imposed by Section 440.185, Florida Statutes (1979), of advising the worker that any payment of wage-loss benefits must be preceded by a request from him, the carrier cannot be said to have acted in bad faith by not distributing such benefits to the employee before its receipt of the request. The record before us discloses that the claimant was determined to have reached maximum medical improvement (MMI) on August 29, 1980, and that by letter of September 17, 1980, the carrier then informed him to file a request for wage-loss with it, and enclosed wage-loss request forms with the letter, but that he failed to request such benefits until January, 1981. Under the circumstances, I do not believe that the record supports a finding of bad faith as it pertains to the carrier's inactivity before the claimant filed his request.
I disagree, however, with the majority's reversal of the deputy's order as it concerns the carrier's bad faith in delaying permanent total disability (PTD) payments to claimant after being placed on notice of his condition, revealing him incapable of finding gainful employment. The majority relies on Pan Am Tobacco Corp. v. Brown, 416 So.2d 1211 (Fla. 1st DCA 1982), and Harper Plumbing & Heating v. Boyd, 418 So.2d 396 (Fla. 1st DCA 1982), and now concludes that claimant was "not patently totally disabled... ." Ante at 32. The facts in Pan Am and Harper were far different from those here. The court's opinions were *34 based on complete records, and they show that the awards, reversed on appeal, rested upon claimants' subjective complaints of pain without a foundation establishing a good faith work search. The findings before us, however, clearly reveal an extensive job search, a medical determination of substantial permanent impairment, and the carrier's continued failure to investigate the extent of the worker's disability, as well as its resistance to paying PTD benefits after being given abundant information concerning the employee's condition.
I need not review in detail the numerous cases from our court holding that a carrier's failure to place needed benefits promptly in the hands of the injured worker, once it has notice of his condition, constitutes bad faith, see, e.g., Florida Erection Services, Inc. v. McDonald, 395 So.2d 203 (Fla. 1st DCA 1981); Holiday Care Center v. Scriven, 418 So.2d 322 (Fla. 1st DCA 1982); B & J Windows v. Sweitzer, 420 So.2d 363 (Fla. 1st DCA 1982). Nor need I extensively recite those cases deciding that a carrier's passive rejection of claims on mere technical matters, or its failure to investigate the extent of disability, will not be tolerated. Florida Erection Services, Inc.; Ardmore Farms v. Smith, 423 So.2d 1039 (Fla. 1st DCA 1982); Layne Atlantic Company v. Scott, 415 So.2d 837 (Fla. 1st DCA 1982).
The difficulty in our addressing the portion of the deputy's order determining that the carrier acted in bad faith by not promptly accepting claimant as permanently and totally disabled is that it is based on an incomplete record. Missing from the record before us is the transcript of the proceeding on the claim for PTD benefits. We do, however, have claimant's deposition, disclosing that claimant had not worked since the date of his accident on September 6, 1979, and showing that he then provided appellant with a long list of prospective employers, contacted from the date of MMI (August 29, 1980), until the date of the deposition, and had not yet been able to obtain gainful employment. Additionally, claimant then testified that he was incapable of sitting or standing in one position for more than thirty minutes; that he could only walk a short distance before experiencing pain, and that most of the day was spent by him in a prone position.
The findings in the order granting PTD benefits recite that the carrier was aware of the following: (1) that claimant had suffered a ruptured intervertebral disc with a permanent impairment rating of 25% to 30% to the body as a whole, and that he had been given medical instructions to avoid prolonged sitting, bending, lifting and other stressful situations involving the use of his spine; (2) that a psychiatrist's report (the report is not in the record, but its date is given as May 12, 1981) had diagnosed claimant as suffering from a psychiatric condition caused by the industrial accident, which resulted in an additional psychiatric impairment of 10%, and (3) that another report by the manager of the Florida State Employment Service (also not in the record, nor is the date given), considered that claimant was unable to compete for jobs in the local labor market due to his physical condition, training, education and experience.[1] Finally, the deputy found that the carrier forced the claimant, for more than a year after he had reached MMI, to conduct monthly an aggressive job search, despite its knowledge of claimant's inability to work.
Although the record as stated is incomplete, those portions of the record now before us clearly reveal that from the filing of the claim for PTD benefits on December 5, 1980, through the hearing on the claim, conducted on August 20, 1981, the carrier resisted paying PTD benefits to claimant, and that after the order was entered on October 5, 1981, granting such benefits  with jurisdiction reserved for considering the issue of attorney's fees  it finally complied with the order by paying PTD benefits and did not file an appeal. The only *35 substantial questions remaining unresolved by the record are what was the extent of the carrier's knowledge concerning claimant's impairment and when did it obtain its knowledge?
The primary reason the record does not contain this needed information is that the employer/carrier, as appellant, has favored us only with those portions of the record directly relating to that proceeding which was held on claimant's motion for attorney's fees. In those circumstances where an appellate court reviews a lower tribunal's final action which is based upon an incomplete record, the rule is clear that the court, before it reaches a decision, must first give the parties an opportunity to supplement the missing record. Fla.W.C.R.P. 18(d). Recently, in Starks v. Starks, 423 So.2d 452 (Fla. 1st DCA 1982), we ordered the parties to do precisely that. Following the provisions of Florida Rule of Appellate Procedure 9.200(f)(2), which are practically identical to those of rule 18(d), we initially directed the parties to attempt supplementation of the record. After their efforts to do so were unsuccessful, we affirmed, stating that as we had no way of discovering the factual context of the case presented before the trial court, we were required to presume the lower court's findings were not in error. And, quoting with favor from Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla. 1979), we recognized that even if the result reached by the lower tribunal appears erroneous from the findings reviewed, an appellate court is nevertheless precluded from reversing, because there is no way of determining whether its conclusion could be supported by the evidence or by an alternative theory. 423 So.2d at 453-54. To date, no effort has been made by anyone in the case at bar to provide us with a complete record.
Given the limited record now before us, I do not see how we can do otherwise than was done in Starks: Before reaching the merits of the appeal relating to the carrier's delay in promptly paying PTD benefits to claimant after it had notice of his condition, first order the parties to bring up a record which will support a meaningful appellate determination on the issue raised.
NOTES
[1] This report was apparently filed sometime after the Division's evaluation report, dated May 4, 1981, recommending that the carrier provide the claimant with vocational counseling, and, if applicable, vocational training or job placement assistance.