SMITH, Judge.
This is an appeal of an order of a judge of compensation claims awarding attorney’s fees based upon a finding that the employer/servicing agent (E/SA) acted in bad faith in failing to timely investigate and timely accept the claimant’s claim for permanent total disability (PTD) benefits. We reverse.
The essential facts are not in dispute. The 53 year old claimant sustained a com-pensable accident in 1981 when she slipped *1263 and fell on a wet floor at work injuring her right knee. A few years later, she injured her left knee when her right knee gave way. After her compensable accident, claimant underwent several surgeries on her knees, ultimately undergoing a total knee replacement of her right knee in October, 1988.
Claimant’s treating physician, Dr. Bronfman felt that she reached maximum medical improvement on June 14, 1989, and released her to return to light-duty, sedentary employment. On July 18, 1989, he wrote a note that claimant could return to light-duty work. Upon receipt of Dr. Bronfman’s note, claimant’s temporary total disability (TTD) benefits were suspended.
Claimant had always returned to work after each of her previous knee surgeries, and she again attempted to return to work, working briefly for the employer in July. On July 27, 1989, the insurance adjustor for the SA sent a letter to Dr. Bronfman requesting a permanent impairment rating.
On August 21, 1989, claimant received a note from Dr. Bronfman that she was unable to work as of that date. Immediately thereafter, claimant filed a claim for disability benefits seeking alternatively PTD benefits or TTD benefits. Attached to the claim was Dr. Bronfman’s August 21 note. Upon receipt of the claim, TTD benefits were reinstated as of August 22, 1989.
The insurance adjustor never received a response to her July 27, 1989 letter and on September 5,1989, a second letter was sent to Dr. Bronfman requesting a statement as to claimant’s work status. Dr. Bronfman responded by letter dated September 12, 1989, advising that the claimant had been placed on a no work status as of August 21, 1989 and that she would remain out of work until her next office visit which was scheduled in February, 1990. The insurance adjustor testified that she understood Dr. Bronfman’s letter to mean that he would reassess the claimant’s work status in February of 1990.
On October 12, 1989, Dr. Bronfman completed a report for the Florida Retirement System which listed claimant as permanently and totally disabled from gainful employment and incapable of any kind of work. This report was forwarded to the SA on October 26, 1989 and received on October 30, 1989. The insurance adjustor did not accept the report as conclusive proof that claimant was PTD because she felt it was inconsistent with Dr. Bronfman’s earlier letter indicating that he would reassess the claimant’s situation in February of 1990. Meanwhile, on October 26,1989, claimant was noticed for her deposition which was ultimately taken on November 27, 1989.
Upon receipt of Dr. Bronfman’s report, the employer notified claimant that she would be terminated and claimant voluntarily resigned on November 7. Counsel for the SA asked counsel for claimant if he would agree for claimant to have an independent medical examination and counsel would not agree. The SA filed a motion for an independent examination.
On November 29, 1989, counsel for the E/SA wrote a letter to Dr. Bronfman requesting copies of his office notes for August 21, 1989, and asking for information regarding claimant’s possible return to work and whether her no work status was temporary. Dr. Bronfman responded by sending his office notes. A few weeks later, Dr. Bronfman’s deposition was noticed and set for January 19, 1990.
At his deposition, Dr. Bronfman opined that claimant is permanently and totally disabled from gainful employment. He testified that concerning claimant’s employment he was always amazed that she could work at all. On January 24, 1990, the SA administratively accepted claimant as PTD.
A hearing was held on claimant’s request for bad faith attorney’s fees. The JCC found the E/SA acted in bad faith because they had actual notice of claimant’s PTD status at the end of October, 1989, but did not accept claimant as PTD until January *1264 24, 1990. Relying on this court’s decisions in Grafton v. Sacred Heart Hospital, 504 So.2d 537 (Fla. 1st DCA 1987) and Samurai of the Falls, Inc. v. Sul, 509 So.2d 359 (Fla. 1st DCA 1987), the JCC reasoned that too much time elapsed and too little investigation was performed during this period.
We respectfully disagree that the E/SA acted unreasonably in conducting the investigation. It is our view that the facts enumerated above are insufficient to support a finding of bad faith.
Claimant had always returned to work after each of her preceding injuries and in fact her doctor returned her to work in June, 1989. Although he reported that she was unable to work in August, 1989, he did not unequivocally state that she was PTD at that point. The E/SA immediately accepted her as TTD and commenced an investigation by attempting to obtain verification from Dr. Bronfman and by scheduling claimant’s deposition. See Burnup & Sims, Inc. v. Ozment, 440 So.2d 29, 32 (Fla. 1st DCA 1983) (although claimant who is PTD has a right to be accepted as PTD, the fact that E/C continues to pay TTD benefits during the pendency of investigation is relevant to the issue of whether the E/C acted reasonably in continuing to investigate a PTD claim).
The insurance adjustor interpreted Dr. Bronfman’s September 12th response to her status request as meaning that he would reassess claimant’s situation in February, 1990. In our view this was not an unreasonable interpretation. When the E/SA received Dr. Bronfman’s report on October 30 that claimant was PTD, at that point the E/SA needed to investigate the discrepancy in Dr. Bronfman’s report and the E/SA proceeded to do this by writing a letter to Dr. Bronfman and then scheduling his deposition. While these actions resulted in a delay of a few months in acceptance of claimant’s PTD, we cannot say the delay was unreasonable considering the difficulties necessarily inherent in scheduling depositions to accommodate the exigencies of modern day law and medical practices, especially when the claimant is receiving TTD benefits in the interim.
The Grafton decision upon which the JCC relied is distinguishable. In Grafton, the E/C conducted no investigation for nearly a year after receiving a letter advising them that the treating doctor would testify that the claimant was PTD for purposes of receiving social security disability benefits. Further, the E/C neglected to offer any evidence of its own at the trial in controversion of the claim whereas in this case, the E/SA accepted the claimant’s condition before the claim ever went to trial. Finally, in Grafton, although the doctor’s deposition confirmed that the claimant was PTD, the E/C nevertheless forced the claimant to go to trial to prove PTD. In contrast, the E/SA in this case immediately accepted claimant as PTD.
The Samurai case relied upon by the JCC is similarly distinguishable. In that case, the E/C initially delayed in paying the proper compensation rate and refused to pay TTD voluntarily from March 20, 1984 to May 25, 1984 despite knowledge from the physician’s deposition on June 7, 1984 that MMI had not been reached until May 25, 1984. After the physician corrected an earlier erroneous impression regarding MMI in the deposition of June 7, 1984, the E/C forced the TTD claim to a hearing, and benefits for the two-month period were not awarded until December 20, 1984. Unlike Samurai, in this case the E/SA immediately accepted claimant as PTD after Dr. Bronfman’s deposition, without a hearing.
For the reasons expressed, we reverse the award of fees based upon a finding of bad faith. Our resolution of the bad faith issue makes it unnecessary for us to reach the remaining issues raised by the E/SA.
REVERSED.
WIGGINTON and KAHN, JJ., concur.