SHIVERS, Judge.
This appeal is from a workers’ compensation order denying bad faith attorney’s fees. We reverse.
James Kirkland was employed by Northwest Florida Regional Housing Authority on September 30, 1985, when he suffered a compensable work-related back injury. The injury required surgery in July 1986. The surgery was performed by Dr. Wood-ham, who was the primary treating physician. The doctor is a neurologist practicing in Dothan, Alabama. The surgery resulted in a severe pain syndrome called causalgia.
Continued medical care was provided by the employer/carrier (e/e). A doctor at Shands hospital recommended surgery, which Kirkland refused. In December 1987 Kirkland’s orthopedist — Dr. Maddox — suggestéd Kirkland should return to some type of sedentary work so that “his world revolves less around pain.” Dr. Maddox thought Kirkland could work eight hours a day. In December 1988 the e/c sent Kirkland to a two week pain program in Missouri, but he was discharged because he would not quit smoking.
Carol Underwood is a rehabilitation specialist who sent a form to Dr. Woodham. He returned the form to Underwood and the carrier in March 1989.
Dr. Woodham indicated on the form that Kirkland reached maximum medical improvement on March 20, 1989. He also indicated Kirkland had a permanent physical impairment and could not work full-time or part-time.
A physical abilities evaluation questionnaire was enclosed with the form. Dr. Woodham did not return it. Underwood testified the information sought by the questionnaire was “vital” and “absolutely necessary” in determining Kirkland’s physical capabilities regarding job placement.
After Dr. Woodham’s March 1989 partial response, he would not communicate with Underwood. He would not return her calls, and his staff told her it was his policy to not fill out evaluation questionnaires of the type she required. After Underwood received Dr. Woodham’s March 1989 response, she reiterated Dr. Woodham’s findings to the e/c every month until October 1989, when she was instructed by the e/c to close her file.
In April 1989 Kirkland was required to undergo a one day observation at the North Florida Institute of Rehabilitation. The observation was done by physical therapists and nurses, who concluded that Kirkland could “perform sedentary to light/medium type of work.”
In July 1989 Kirkland hired an attorney who filed a claim for permanent total disability (PTD) benefits on August 4, 1989. The e/c made several unsuccessful attempts to contact Dr. Woodham. Eventually the doctor sent the e/c notes from a March 1, 1990, examination of Kirkland. The notes indicated Kirkland had a disability rating of 15% to 17%, but Kirkland told the doctor he was interested in going back to work.
Temporary total disability (TTD) benefits were paid from the date of injury until March 28, 1990, when the e/c notified Kirkland he was being switched to temporary partial disability status, would receive wage loss benefits, and was required to do a work search. Kirkland conducted an unsuccessful work search until the e/c accepted him as permanently and totally disabled on August 23, 1990.
Two days before Kirkland was accepted as PTD, Dr. Woodham was deposed. The deposition was arranged by Kirkland’s attorney. Dr. Woodham testified in his deposition that he stands by his opinion that Kirkland is unable to work full-time or part-time and has permanent physical limitations. He did not disagree with the rehabilitation facility’s report that Kirkland could work, but he seriously doubted whether Kirkland would ever work again.
Kirkland filed a claim for attorney’s fees pursuant to section 440.34(3)(b), Florida Statutes (1985), on the ground the e/c act *1261 ed in bad faith by not timely accepting Kirkland as PTD. A hearing on the claim was conducted on December 19, 1990. The adjustor for the carrier testified she accepted Kirkland as PTD on August 23, 1990, because of Dr. Woodham’s deposition testimony, the unsuccessful work search, and the remoteness of Kirkland’s residence in Ebro, Florida.
The judge of compensation claims denied the claim for bad faith attorney’s fees on the ground the e/e continuously assisted Kirkland and never terminated benefits. The order states that the e/c “cannot be said to have acted in bad faith because [Dr. Woodham] would not respond to their inquiries.” We disagree.
The delay or denial of payment, without a showing of active effort and initiative on the part of the carrier to fairly and expeditiously determine its obligations to place needed benefits in the hands of the injured worker is totally inconsistent, in our view, with the notion that a claimant is entitled under this law to have his benefits paid without the necessity of first seeking the advice and services of an attorney for the simple purpose of making his claim of entitlement to benefits known to the carrier.
Florida Erection Services, Inc. v. McDonald, 395 So.2d 203, 211 (Fla. 1st DCA 1981).
In State v. Roberts, 586 So.2d 1262 (Fla. 1st DCA 1991), an award of bad faith attorney’s fees was reversed. The judge of compensation claims awarded the fees on the ground the employer/servicing agent (e/sa) did too little investigation between October 1989 — when they had actual notice of claimant’s PTD — and January 1990. This court found the delay in investigating and accepting the claim for PTD benefits was reasonable because the e/sa thought the treating doctor’s reports were conflicting, they therefore needed to investigate the conflicting reports, and PTD benefits were paid immediately after the doctor was deposed. The delay in Roberts, however, was four months — not seventeen months as in the case at bar.
While these actions resulted in a delay of a few months in acceptance of claimant’s PTD, we cannot say the delay was unreasonable considering the difficulties necessarily inherent in scheduling depositions to accommodate the exigencies of modern day law and medical practices, especially when the claimant is receiving TTD benefits in the interim.
Id. at 1264. Not only was the delay in Kirkland’s case more than four times the length of the delay in Roberts, but Appellant correctly states that the e/c never sought to depose Dr. Woodham, whose missing, “absolutely necessary” information turned out to be essentially a restatement of the March 1989 report he returned to Underwood; neither did the e/c attempt to obtain the information from another physician. Therefore, the evidence in this case is not competent to justify a finding that a seventeen month delay in obtaining supposedly “vital” information to supplement the treating physician’s opinion was reasonable.
REVERSED and REMANDED for further proceedings consistent herewith.
MINER and WOLF, JJ., concur.